# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| ANCORA TECHNOLOGIES, INC.,<br><br>          Plaintiff,<br><br>   v.<br><br>LG ELECTRONICS INC. and LG ELECTRONICS U.S.A., INC.,<br><br>          Defendants. | CIVIL ACTION NO. 1:20-CV-00034-ADA<br><br>JURY TRIAL DEMANDED |
| ANCORA TECHNOLOGIES, INC.,<br><br>          Plaintiff,<br><br>   v.<br><br>SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>          Defendants. | CIVIL ACTION NO. 1:20-CV-00034-ADA<br><br>JURY TRIAL DEMANDED |

**PUBLIC VERSION**

**ANCORA'S MOTION TO EXCLUDE CERTAIN TESTIMONY OF
<u>LG ELECTRONICS' TECHNICAL EXPERT DR. SUZANNE BARBER</u>**

Ancora brings this motion to exclude two aspects of the testimony and opinions of Dr. Suzanne Barber, LG Electronics' ("LGE") proffered expert on invalidity and non-infringement. Each of these three opinions flout the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). The Court should exclude them.

First, Dr. Barber's non-infringement opinions turn on claim construction arguments that improperly "seek[] to limit the full scope of a term's plain and ordinary meaning." *Huawei Techs., Co, Ltd v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 968 (N.D. Cal. 2018).[1] Such claim construction opinions are improper and "must be stricken." *Id.*; *accord Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, 2015 WL 8274055, at *2-4 (E.D. Tex. Dec. 8, 2015) (holding that experts "cannot rely on statements in the prosecution history to limit the ordinary meaning of the term").

Second, Dr. Barber uses her report to parrot expert reports of Samsung witnesses (e.g., Drs. Nettles, Arbaugh, and Hicks) who LGE has not retained and has never disclosed as witnesses in this case. Courts routinely reject such end-runs around the hearsay rule, *Factory Mut. Ins. Co. v. Alon USA L.P.*, 705 F.3d 518, 524 (5th Cir. 2013) ("[T]he expert may [not] simply parrot impermissible hearsay evidence, thereby allowing a party to circumvent the rules against hearsay."), and the rules governing expert disclosures, *Howard v. Bosch Thermotechnology Corp.*, 2018 WL 2087259, at *3 (E.D. Mo. May 4, 2018) (precluding plaintiff's expert from testifying about report where plaintiff failed to timely disclose expert pursuant to court's scheduling order).

I.   **BACKGROUND**

Ancora accuses LGE of infringing the methods claimed in U.S. Patent No. 6,411,941 (the '941 Patent) by, e.g., remotely delivering software updates (OTA Updates) to LGE smart phones and smart TVs, configuring those devices to write verification structures to BIOS memory, and

---

[1] All emphases in this brief are added by Ancora unless otherwise noted.

verifying the software updates using that verification structure. LGE's counsel retained Dr. Barber as a "technical expert" to opine on, among other things, whether LGE practiced the '941 Patent, *see* Ex. 1 (Barber Rebuttal Rpt.) ¶¶ 1-2, and whether the ''941 Patent is valid, *see* Ex. 2 (Barber Invalidity Rpt.[2]

## II. LEGAL STANDARD

Expert opinions are admissible only if they are relevant, "will help the trier of fact to understand the evidence or to determine a fact in issue," and are "the product of reliable principles and methods" that were "reliably applied" to "the facts of the case." Fed. R. Evid. 702. Thus, "[t]he court, in its role as gatekeeper, must exclude expert testimony that is not reliable and not specialized, and which invades the province of the jury to find facts and that of the court to make ultimate legal conclusions." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F. 3d 1356, 1364 (Fed. Cir. 2008). LGE must "prove by a preponderance" that Dr. Barber's challenged opinions are admissible. *Paz v. Brush Engineered Materials, Inc.,* 555 F.3d 383, 388 (5th Cir. 2009). It cannot.

## III. ARGUMENT

### A. Dr. Barber's Claim Construction Arguments That Seek to <u>Limit</u> The Plain and Ordinary Meaning of Claim Terms Must Be Stricken.

Dr. Barber's non-infringement opinion depends on her artificial narrowing of the plain meaning of three claim terms that (a) the Court construed to have their plain and ordinary meaning or (b) were never proposed for construction.[3] Specifically, and as summarized in the below table, Dr. Barber's non-infringement opinion as to each term is based entirely on her attempt to <u>limit</u> the scope of the term by importing limitations from the specification or prosecution history.

---

[2] All exhibits are appended to the March 31, 2021 Declaration of Steven M. Seigel. *See* D.I. 193.

[3] The "plain and ordinary meaning" applies both when the court "adopt[s]" the plain and ordinary meaning during *Markman* and when "neither party request[s] [a term's] construction." *YETI Coolers, LLC v. RTIC Coolers, LLC*, 2017 WL 404519, at *1 (W.D. Tex. Jan. 27, 2017).

To do so, Dr. Barber conducts what amounts to an (incorrect) *Markman* analysis—relying on the claim language, specification, and prosecution history of the '941 Patent to <u>limit</u> the meaning of each term. This is improper.

| Term / Court's Construction | Dr. Barber's Claim Construction Opinion |
|---|---|
| "memory of the BIOS"<br><br><u>Court's Construction</u>: This term does not require construction. *See* D.I. 69 (Final Claim Construction Order) at 3. | "[M]emory of the BIOS" excludes "secondary storage." *See* Ex. 1 (Barber Rebuttal Rpt.) at:<br>• *Id.* ¶ 287 ("[T]he plain meaning is evident to a person of ordinary skill <u>based on the disclosures and the figures [of the '941 Patent] as discussed below</u>.");<br>• *Id.* ¶ 288-89 (in "<u>Figure 1 of the '941 Patent</u> . . . , no secondary storage (like hard drives, dongles, etc.) is shown or contemplated.");<br>• *Id.* ¶ 290 ("Further evidence that RAM or secondary memory storage is not the claimed memory of the BIOS <u>is found in the specification at several places</u> . . .");<br>• *Id.* ¶ 295-301 ("[T]he <u>claims, like the specification</u>, lack any statement, or even any suggestion, that the 'erasable, non-volatile memory area of a BIOS' could be . . . secondary memory . . . . <u>The file history confirms this understanding</u>.") |
| "license"<br><br><u>Court's Construction</u>: The portion of the preamble reciting "a method of restricting software operation within a license . . . ." is non-limiting, and the term "license" does not need to be construed. D.I. 69 at 2. | "license" means "legal permission to use software" and excludes confirming a program's authorization or verification to run on a device:<br>• *Id.* ¶ 154 ("The use of 'license' <u>in the '941 patent</u> is consistent with the understanding of a person having ordinary skill in the art that it relates to a <u>legal permission to use software</u>.");<br>• *Id.* ¶ 155 (" '[T]he plain and ordinary meaning of the term 'license,' . . . is a <u>legal right to use software</u>.'");<br>• *Id.* ¶ 156-57 ("The 'restrictions' <u>discussed in the patent include procedures used to penalize a user</u> that is believed to have obtained software inappropriately.");<br>• *Id.* ¶ 168 ("[L]icensed programs are intended to be limited to the purchaser / licensee. Only specific computers or people that are identified with a particular license can operate the software.") |
| "pseudo-unique key"<br><br><u>Court's Construction</u>: Not proposed for construction. | "pseudo-unique key" must be "unique to a[] particular device or a user" and excludes "public keys":<br>• *Id.* ¶¶ 252-261 (citing extensive portions of the specification to argue for narrow construction of "pseudo-unique key");<br>• *Id.* ¶¶ 262-267 (citing extensive portions of the file history to argue that "pseudo-unique key" must mean a key that "uniquely identif[ies] the . . . device that is performing the accused verification operation"). |

3

"Because claim construction is a matter of law to be decided by the court, and, by implication, experts are not permitted to argue claim construction to the jury, an expert's opinion that seeks to limit the full scope of a term's plain and ordinary meaning must be stricken." *Huawei*, 340 F. Supp. 3d at 968. In short, impermissible claim construction for unconstrued terms happens when an expert does exactly what Dr. Barber does here: "relies heavily on the prosecution history [and] specification[] . . . to explain and expound upon a specific meaning and/or requirements of the terms identified." *MediaTek Inc. v. Freescale Semiconductor, Inc.*, 2014 WL 971765, at *5 (N.D. Cal. Mar. 5, 2014); *see Ziilabs Inc.*, 2015 WL 8274055, at *2-3 (striking expert testimony that "determined the plain and ordinary meaning of the term 'processor' from the specification of the '584 patent" and used "statements in the prosecution history to <u>limit</u> [its] ordinary meaning").

Thus, if a term is to be given its "plain and ordinary meaning," the Court should preclude an expert from arguing a more <u>limited</u> construction. *Maxell, Ltd. v. Apple Inc.*, 2020 WL 8269548, at *21 (E.D. Tex. Nov. 11, 2020) (striking expert opinion that "use[d] embodiments from the specification to limit [a] term's plain and ordinary meaning"); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010) (finding no *O2 Micro* violation where district court precluded the Defendants' expert from arguing to the jury that a term that was given its plain and ordinary meaning "required an IP address"). As demonstrated below, Dr. Barber violates this rule for each of these three terms by relying on the prosecution history and specification to advocate for a construction far narrower than the "full range of [a term's] ordinary meaning." *Trustees of Columbia Univ. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016).

**(a) "memory of the BIOS"**: Dr. Barber's argument that "memory of the BIOS" excludes any "secondary memory" is based entirely on her interpretation of the '941 Patent's specification and prosecution history. *See* Ex. 1 (Barber Rebuttal Rpt.) at ¶¶ 287-306. Dr. Barber extensively

analyzes the claim language, *id.* ¶¶ 294-295, the specification, *id.* ¶¶ 288-292 (citing '941 Patent at Fig. 1, 1:19-26, 1:44-52; 2:10-26; 3:4-17, 3:25-34; 5:9-18), and the "file history," *see id.* ¶¶ 296-301, to arrive at her conclusion that "secondary storage cannot be part of any 'erasable, non-volatile memory area of a BIOS of the computer," *id.* ¶ 301.

"These excerpts show [that Dr. Barber] was not relying on h[er] own expertise in explaining the plain and ordinary meaning of the term, but rather relying on the patent's intrinsic record to narrow [the term's] plain meaning." *Salazar v. HTC Corp.*, 2018 WL 1992417, at *2 (E.D. Tex. Apr. 27, 2018) (striking expert opinion). She cannot be permitted to do so at trial.

**(b) "license" / "license record"**: Dr. Barber also opines that the term "license"—and the related unconstrued term "license record"—refers only to "a legal permission to use software" and excludes the concept of authorizing or verifying a program to run on a computer. Ex. 1 (Barber Rebuttal Rpt.) at ¶ 154. As with other terms, Dr. Barber grounds her opinion entirely in her reading of the patent's specification, *id.* ¶¶ 152, 156, 160, 167-168, arguing that "license" can mean only one thing: "a legal permission to use software." *Id.* ¶ 154. This is improper, as "an expert's opinion that seeks to limit the full scope of a term's plain and ordinary meaning must be stricken." *Huawei*, 340 F. Supp. 3d at 968.

**(c) "pseudo-unique key"**: Finally—and most egregiously—Dr. Barber engages in an extended 10-page claim construction argument to opine that "pseudo unique key" must be limited to a key that is "unique to a[] particular device or a user." Ex. 1 (Barber Rebuttal Rpt.) ¶ 246. As with the two previous terms, Dr. Barber reaches this conclusion by analyzing the claim language, *id.* ¶¶ 260-263, 273, specification, *id.* ¶¶ 257-261, 270, 272, and prosecution history, *id.* ¶¶ 262-264, ultimately concluding that a "pseudo-unique key" excludes any key that "does not uniquely identify the [] device that is performing the accused verification operation." *Id.* ¶ 267.

5

In sum, for each of these three terms, Dr. Barber improperly seeks to "argue claim construction to the jury" by resorting to "intrinsic . . . evidence to explain the meaning of a claim term" and narrow its meaning. *MediaTek*, 2014 WL 971765, at *5. Each of these impermissible claim construction arguments should be excluded. *Accord Salazar*, 2018 WL 1992417, at *2 (striking expert opinion that relied on "intrinsic record" rather than "his own expertise in explaining the plain and ordinary meaning of the term"); *CardSoft, Inc. v. VeriFone Sys., Inc.*, 2012 WL 12895875, at *2-*3 (E.D. Tex. June 3, 2012) (expert opinions on "the proper scope of [patent] claims" are inadmissible); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1364 n.6 (Fed. Cir. 2008) ("[A]llowing a witness to testify before the jury on claim construction would be improper.").

### B.   Dr. Barber's Opinions That Back-Door the Testimony of <u>Samsung</u>'s Experts Should Be Excluded.

The Court should also preclude Dr. Barber from acting as an improper conduit for the opinion of other undisclosed experts that will not be subject to cross-examination—namely, experts <u>disclosed by Samsung</u> but whom LGE has not disclosed or retained in this case.

In a 7-page section of her invalidity report, Dr. Barber opines that "Arbaugh," one of LGE's prior art references, is entitled to a priority date of March 1997. *See* Ex. 2 (Barber Invalidity Report) ¶¶ 225-244. To reach that opinion, Dr. Barber relies extensively on the expert reports of Drs. Nettles, Hicks, and Arbaugh—experts that <u>Samsung</u> disclosed in <u>its</u> case, but for which <u>LGE</u> produced no Rule 26 expert report and failed to include in its Rule 26 Initial Disclosures. Indeed, in Dr. Barber's summary paragraph for this 7-page section, she admits that:



*Id.* ¶ 225. Dr. Barber then weaves into her analysis statements and factual assertions by these individuals, including egregious double hearsay such as: ▋

▋

▋ *Id.* ¶ 235.

Dr. Barber must be precluded from serving as the hearsay mouthpiece for experts and witnesses who will not appear in LGE's case in chief. Although "experts may base their opinions on otherwise-inadmissible information, such as hearsay," FRE 703 "was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of . . . witnesses on whose statements or opinions the expert purports to base his opinion." *Factory Mutual*, 705 F.3d at 524 (citation and quotation marks omitted).

This risk of back-dooring hearsay is all the more problematic here because LGE has identified none of these individuals as witnesses—meaning they will not testify at trial and their hearsay statements (which Dr. Barber relies on) are not subject to cross examination. *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 546 (5th Cir. 1978) ("[T]o admit the hearsay opinion of an expert not subject to cross-examination goes against the natural reticence of courts to permit expert opinion unless the expert has been qualified before the jury to render an opinion."). LGE's failure to disclose Drs. Nettles, Arbaugh, and Hicks as witnesses—as required by the Court's scheduling order—further compels the exclusion of any testimony from Dr. Barber that relies on such witnesses' reports or declarations in other cases. *See Howard*, 2018 WL 2087259, at *3 (precluding plaintiff from offering expert testimony about a timely-disclosed report where plaintiff never disclosed the expert as a witness pursuant to the court's scheduling order).

In sum, all of Dr. Barber's testimony that purports to rely on the opinions and statements of Samsung witnesses (Drs. Nettles, Arbaugh, and Hicks) should be stricken.

## IV. CONCLUSION

The Court should strike and preclude Dr. Barber from testifying about: (1) improper claim construction opinions (e.g., ¶¶ 152-170, 175, 185, 244-273, 283-285, 287-306, 355-364 of Dr. Barber's Rebuttal Report, Ex. 1) and (2) opinions premised on hearsay testimony of undisclosed experts (e.g., ¶¶ 225-244 of Dr. Barber's Invalidity Report, Ex. 2).

Date: March 31, 2021

/s/ *Steven M. Seigel*
Charles Ainsworth
State Bar No. 00783521
Robert Christopher Bunt
State Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 418
Tyler, TX 75702
903/531-3535
charley@pbatyler.com
rcbunt@pbatyler.com

Lexie G. White (Texas 24048876)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
lwhite@susmangodfrey.com

Andres Healy (*pro hac vice*)
Steven M. Seigel (*pro hac vice*)
Nicholas S. Crown (*pro hac vice*)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Tel: (206) 516-3880
Fax: 206-516-3883
ahealy@susmangodfrey.com
sseigel@susmangodfrey.com
ncrown@susmangodfrey.com

Zachary B. Savage (*pro hac vice*)
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: (212) 336-8330
Fax: (212) 336-8340
zsavage@susmangodfrey.com

**COUNSEL FOR PLAINTIFF ANCORA TECHNOLOGIES, INC.**

9

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being notified of the filing of this document via the Court's CM/ECF system per Local Rule CV-5(b)(1). I also hereby certify that LGE's counsel of record are being served with a copy of the foregoing document via electronic mail on this 31st day of March, 2021.

> /s/ *Steven M. Seigel*
> Steven M. Seigel

**CERTIFICATE OF CONFERENCE**

I certify that on March 26, 2021, counsel for Ancora conferred with counsel for LGE concerning the relief sought in this motion, and was advised that counsel for LGE opposed.

> /s/ *Steven M. Seigel*
> Steven M. Seigel