**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| ANCORA TECHNOLOGIES, INC., | |
| Plaintiff, | CIVIL ACTION NO. 1:20-CV-00034-ADA |
| v. | |
| LG ELECTRONICS INC. and LG ELECTRONICS U.S.A., INC., | JURY TRIAL DEMANDED |
| Defendants. | |
| ANCORA TECHNOLOGIES, INC., | |
| Plaintiff, | CIVIL ACTION NO. 1:20-CV-00034-ADA |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

**DEFENDANT LG ELECTRONICS INC. AND LG ELECTRONICS U.S.A., INC.'S
*DAUBERT* MOTION TO EXCLUDE AND STRIKE
CERTAIN OPINIONS OFFERED BY DR. DAVID MARTIN**

# PUBLIC VERSION

TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................ 1

II.     LEGAL STANDARDS ............................................................................................... 1

III.    ARGUMENT .............................................................................................................. 1

        A.      Dr. Martin's opinions that Samsung's E-FOTA are "identical or near
                identical" to LGE's OTA Update are unsupported and unreliable. ...................... 1

        B.      Dr. Martin's opinions relating to LGE's alleged direction or control of
                third parties must be excluded because they are not sufficiently reliable.............. 3

                1.      Dr. Martin does not analyze LGE's alleged direction or control of
                        ███████████████████████████ ............................................. 4

                2.      Dr. Martin does not analyze LGE's alleged direction or control of
                        ███████████████████████████ ........................................ 5

                3.      Dr. Martin does not analyze alleged direction or control of end
                        users. ..................................................................................................... 7

                4.      Dr. Martin does not have any industry experience and is not
                        qualified to opine on direction or control. .................................................. 7

        C.      Dr. Martin's opinions relating to the "agent" limitation should be
                excluded. ............................................................................................................ 8

        D.      Dr. Martin should be precluded from testifying about X509 certificates. ............ 9

IV.     CONCLUSION ........................................................................................................ 10

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(S)**

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (2001)..............................................................................................8

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)...........................................................................................1, 9

*Grecia v. VUDU, Inc.*,
    No. C-14-1220-EMC, 2015 WL 538486 (N.D. Cal. Feb. 9, 2015) ......................4, 6

*Johnson v. Arkema, Inc.*,
    685 F.3d 452 (5th Cir. 2012) ................................................................................7

*Supply & Bldg. Co. v. Estee Lauder Int'l.*,
    No. 95 CIV. 8136(RCC), 2001 WL 1602976 (W.D.N.Y. Dec. 14, 2001) ..............8

**RULES**

Fed. R. Evid. 702 ...............................................................................................1, 2, 8

## I.     INTRODUCTION

Defendants LG Electronics Inc. and LG Electronics U.S.A., Inc. (collectively, "LGE") move to exclude certain unreliable opinions offered by Ancora Technologies, Inc.'s expert, Dr. David Martin.  Dr. Martin's opinions that Samsung's E-FOTA is "identical or near identical" to ███████████████████████ functionality are speculative and unsupported.  Further, Dr. Martin is unqualified to opine on whether LGE directs or controls relevant third parties, and he provides no factual or legal basis for his opinions.  Dr. Martin does not apply the Court's construction for the "agent" limitation in his Rebuttal Report, and he applies different constructions for this term in his affirmative and rebuttal reports.  Lastly, Dr. Martin mentions the X509 standard in passing, but does not rely on it in any proffered opinion.

## II.    LEGAL STANDARDS

"Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993).  Rule 702 thus bars expert testimony unless: (1) "the testimony is based on sufficient facts or data;" (2) "the testimony is the product of reliable principles and methods;" and (3) "the expert has reliably applied the principles and methods to the facts of the case."  FED. R. EVID. 702.

## III.   ARGUMENT

### A.     Dr. Martin's opinions that Samsung's E-FOTA are "████████████ ██████████████ are unsupported and unreliable.

Dr. Martin opines in his report that Samsung's E-FOTA solution is "████████████ ██████████████████████████████████ Ex. A, ¶ 82 ("Martin Main Rpt.").  However, his opinion is not based on any source code or reliable technical documents describing how Samsung's E-FOTA operates.  Instead, he cites various high-level, public websites that provide only overviews with roughly the same few paragraphs describing, only generally, how

Samsung's E-FOTA works.  *Id.*, ¶ 82, n.20.  Notably absent is any meaningful analysis based on technical documents supporting his conclusion that ███████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████ e."  *Id.*, ¶ 83 (emphasis added).[1]

Dr. Martin further concludes that Samsung's Enterprise Mobile Management ("EMM") solutions uses a FOTA Client that "████████████████████████████████████

████.  *Id.*, ¶ 84 (emphasis added).  He vaguely states that "the documentation suggests [Samsung's E-FOTA] *may* have included additional settings to permit [] a silent update"  and "[e]ven if the [] E-FOTA solution is slightly different than LG's ████████████████

███████████████████████████████████████"  *Id.* (emphasis added).  He fails to describe what "████████████ is or how "████████████ would infringe ████████

████████"  The only ostensible support for any of his conclusions are ████████████████

█████████████████████████████."  *Id.*

Finally, Dr. Martin makes a passing statement that Samsung's E-FOTA product includes an "EMM Console" that "appears to primarily offer businesses the ability to control the timing of (and whether to update) ***Samsung-issued and Samsung-developed software for Samsung devices.***"  *Id.*, ¶ 85 (emphasis added).  There is no connection or comparison to the accused ***LGE*** devices or the accused OTA Update process.  Based on the above deficiencies, Dr. Martin's conclusions are fatally flawed because they lack any analysis or support for his opinions.

---

[1] For reasons stated more fully in LGE's motion to exclude and strike certain opinions by Mr. Robert Mills, LGE also seeks to have Dr. Martin's opinion regarding Samsung's E-FOTA functionality excluded because information regarding E-FOTA was not disclosed to LGE during fact discovery.

**B.** **Dr. Martin's opinions relating to LGE's alleged direction or control of third parties must be excluded because they are not sufficiently reliable.**

Dr. Martin repeatedly makes factually and legally unsupported statements that LGE directs or controls various third parties in the over-the-air (OTA) update process rendering LGE liable for *direct* infringement.  Indeed, for each claim limitation, Dr. Martin recycles his mantra that "LG's employees, agents, and/or customers who operate at LG's direction and control" perform the limitation.  *See, e.g.*, Ex. B, ¶¶ 44, 51, 64, 118, 141, 153, 158, 170, 182, 185, 187 ("Martin Phone App'x."); Ex. C, ¶¶ 19, 27, 32, 46, 52, 63, 67, 71, 73 ("Martin TV App'x.").  Despite these repeated assertions of direction and control, he fails to provide any factual or legal basis for his opinions.

By way of background, the accused LGE mobile devices (*i.e.*, phones and tablets) and televisions can receive firmware or software updates through an over-the-air ("OTA") update process.  Relevant to the present discussion are the third party distribution channels that transmit OTA updates to end-user devices.  There are two primary channels for distribution:  (1) updates distributed to mobile devices by ██████████████████████████████████████████ ████████████████████████████████████████████████ (Ex. D, ¶ 64 ("Barber Rebuttal Report.")); and (2) updates distributed to mobile devices and TVs by ████████████████ ████████████.  Two key similarities exist in this analysis:  (1) C█████████████████████ ███████████████████████████████████████████ (*Id.*, ¶¶ 64, 68, 70–71); and (2) ████████████████████████████████████  That is, LGE provides the update package to third parties who ***then*** ██████████████████████████████████████████████████ ████████████.

Dr. Martin provides no analysis regarding the roles of these independent third parties and their separate distribution channels.  He glosses over the role of ████████████ that █████████ ███████████████████████████████, and he completely overlooks the role of end-users in the

process. Further, Dr. Martin contradicts his own conclusion of "direction and control" by confirming that the ███████████████████████████████████████████████████ " ███████████████████████████████████████████████. Ex. A, ¶ 79 ("█ ███████████████████████████████████████████████████████████ ██████████████████████████████████.") (emphasis added).

   1. ***Dr. Martin does not analyze LGE's alleged direction or control of*** ██████████████████████████.

  As discussed above, one distribution channel for OTA updates involves ████████ ████████████████████████████████████████████████. These entities ██████████████████████████████████████████████████████ ████████████████████████. Dr. Martin provides no factual support or explanation for his conclusion that ██████████████████████████████████████████ ████████████████. Rather, Dr. Martin assumes without evidence that █████████████ ███████████████████████████████████████████████████." Ex. B, ¶ 27. There is no analysis under any guidance offered by *Akamai* related to the telecommunications industry (including ██████████████████████████████████████████████ ██████████████ ██████████████████████████████ or any facts that would support a determination that ██████████████████████████████████████████ ████████████████████████████████. There is no basis to support his conclusion that LGE controls ████████████████████████████ "[T]he mere existence of a contractual relationship is not enough" in order to establish direction or control. *Grecia v. VUDU, Inc.*, No. C-14-1220-EMC, 2015 WL 538486, at *4 (N.D. Cal. Feb. 9, 2015).

  Further, during his deposition, Dr. Martin confirmed that he did not analyze all of the various third parties and their roles, and he did not even review ██████████████████████

█████████ Ex. E, 108:17–19 ("Martin Depo. Tr.") ████████████████████████████

████████████████████████████████.").  As noted above, his report did not include

any "direction or control" analysis for ██████████████████.

 With  respect ████████████████████████████████████

████████████████████████████, Dr. Martin has rendered an opinions without

understanding the factual basis for those opinions, and without even analyzing the relationships of

the very parties he assumes LGE directs and controls.

  2. **_Dr. Martin does not analyze LGE's alleged direction or control of_** ████

█████████████████████████████████

 Dr. Martin wrongfully concludes that ██████ operated at LGE's direction and control.

As evidenced by the numerous hearings and the separate Hague requests to ████████████████

█████████████████████████████████████ A simple internet search

illustrates the corporate separateness of the entities that operate under the Korean holding company

LG Corp.[2]  Dr. Martin understands that ██████████████. Ex. A, ¶ 88 ("I understand

that, according to LG's corporate representatives, ████████████████████████

█████████████████████████████").  Despite this, both he and Ancora

inject a false narrative that any entity with "████████████ is directly affiliated with LGE or is

an "alter ego" of LGE.  _Id._, ¶ 88 ("███████████████████████████)").

Based on this incorrect assumption, Dr. Martin fails to provide any analysis of LGE's relationship

with ████████ or any facts that would support his opinion that LGE controls ████████████

█████████████████████████.  He does imply that ████████████████████████,

insinuating a contract with ██████████.  Ex. A, ¶ 98.  However, LGE ████████████████

---

[2] _See, e.g._, a web archive snapshot of LG Corp's corporate structure in 2017:
https://web.archive.org/web/20170425225323/http://www.lgcorp.com/about/affiliatesList.dev.

██████████████████████████████.  Ex. F at 83 (No. 17) ("LGE's 3rd Supplemental

Objections and Responses to Plaintiff's First Set of Interrogatories").

Lastly, Dr. Martin opines that every OTA update in the United States comes by way of ███

███.  This opinion incorrectly injects ████████ (and by false narrative, LGE) into the ███████

████████████████████████████████████.  Moreover, this opinion is

founded on a fundamentally incorrect misstatement of LGE's interrogatory responses.  Ex. A, ¶ 90.

Specifically, Ancora asked (generally) how ████████████████████████████

██████  Ex. F at 84 (No. 18).  In response, ████████████████████████████

████████████████████████████████.  *Id*. at 85.

LGE continued its response stating, ████████████████████████████

████████████.  *Id.*  Dr. Martin's opinion that ████████████████████████

██████████████ is unreliable because it is based on an obvious misquotation:

| Dr. Martin's Opinion (emphasis added) | LGE Actual Response (emphasis added) |
|---|---|
| ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████ | ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ██████████████████████████████ ████████████. |

Lastly, Dr. Martin attempts to shoehorn all ████████████████████████

██████████████, into the same bucket without any analysis.  He does so by way of a

Supplemental Report based on deposition of ████████ pursuant to a third party subpoena.  Dr.

Martin concludes that ████████████████████████████████████." Ex.

G, ¶ 6 ("Martin Supp. Report").  However, there is no analysis, or even ████████████,

indicating how any ████████████████████████████.  Lastly, to the extent

that Dr. Martin seeks to opine that LGE directs or controls ███████, any such testimony at trial is improper because his Supplemental Report makes no such conclusion, and, further, there is no evidence analyzed that███████████████████████████████████████.

### 3. Dr. Martin does not analyze alleged direction or control of end users.

There are no facts or analysis in Dr. Martin's report to support an opinion that LGE directs or controls end users.  LGE (repeatedly) confirms that end users of LGE's accused products are ███████████████████████████."  Ex. F at 11, 13–14, 20.  In his deposition, Dr. Martin admits that his report includes an opinion that LGE directs or controls end users.  Ex. E at 68:13–22 (stating that ███████████████████████████████████████████").  However, his report is devoid of any analysis of how LGE actually controls end users.

### 4. Dr. Martin does not have any industry experience and is not qualified to opine on direction or control.

Dr. Martin has no experience that would qualify him as an expert in the telecommunications industry sufficient to opine on the interactions and responsibilities of the various entities distributing OTA updates.  Ex. A, ¶¶ 5–10; Ex. H ("Martin CV").  Further, while Dr. Martin refers to *Akamai* for his understanding of various tests on direction and control (Ex. A, ¶ 21), his conclusions do not refer or apply any test offered in *Akamai* supporting a conclusion that LGE directs or controls the multitude of independent third parties.  Ex. B, ¶¶ 44, 51, 64, 118, 141, 158, 170, 182, 185, 187; Ex. C, ¶¶ 19, 27, 32, 46, 52, 63, 67, 71, 73.  Given his lack of experience in the relevant industry, failure to provide any analysis, and given the evidence contradicting his own opinions, this Court should exclude Dr. Martin's opinions on direction and control and not permit him to testify on this issue at trial.  *Johnson v. Arkema, Inc*., 685 F.3d 452, 458–59 (5th Cir. 2012) (Courts must "determine whether a body of evidence relied upon by an expert is sufficient

to support that expert's opinion").  Lastly, because Dr. Martin confirms that "joint enterprise" is not a consideration in this case (*Id.*, ¶ 21), any such testimony should be excluded at trial.

Lastly, Dr. Martin admits that he effectively assumed LGE controlled any "agents, and/or customers" who perform the asserted claim limitations.  Ex. E at 90:15–20, 108:17–19, 105:15–24.  Such conclusory statements are not proper expert testimony and should be excluded.  *Supply & Bldg. Co. v. Estee Lauder Int'l.*, No. 95 CIV. 8136(RCC), 2001 WL 1602976, at *4 (W.D.N.Y. Dec. 14, 2001) (expert opinion excluded where it relies upon "[a]ssumptions based on conclusory statements of the expert's client, rather than on the expert's independent evaluation").

### C.      Dr. Martin's opinions relating to the "agent" limitation should be excluded.

The Court construed "agent" to mean "a software program or routine."  Dkt. No. 93 at 36. The Court did not require that the agent have an "OS-level" component.   Indeed, in the Supplemental Claim Construction Order, the Court confirmed this: "The agent ***may*** operate at the OS-level."  *Id.* at 26 (emphasis added) (internal citations omitted).  To be clear, the Court adopted Ancora's proposed construction for the term "agent" that did ***not require*** an OS-level element. Dkt. No. 93 at 28, 36; *see also* Dkt. No. 47 at 17.  Despite this, Dr. Martin takes a contradictory opinion in his Rebuttal Report, repeatedly stating that the "agent" limitation ***must be limited to OS-level agents***.  Ex. I, ¶¶ 99, 106–108, 113, 151, 153–56, 187, 198, 269, 276 ("Martin Rebuttal Report").  Failing to apply this Court's construction for "agent" in his Rebuttal Report, Dr. Martin circumvents his obligation to apply "principles and methods . . . reliably to the facts of the case," (FED. R. EVID. 702) and his opinion should thus be excluded.  *See also Chicago Mercantile*, 782 F. Supp. 2d at 673 ("[E]vidence based upon a mistaken construction of a patent is irrelevant.").

In addition to his failure to apply the Court's construction of "agent" in his Rebuttal Report, Dr. Martin's opinion on the "agent" limitation should still be excluded because he does not apply the same construction to his infringement report.  *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,

239 F.3d 1343, 1351 (2001) ("[C]laims must be interpreted and given the same meaning for purposes of both validity and infringement analyses."). In particular, Dr. Martin provides what he calls a "bootloader" analysis. Ex. B, ¶¶ 20–22 (asserting two separate infringement theories for mobile devices, the "installer" analysis and the "bootloader" analysis). For the "agent" limitation in this bootloader scenario, ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████. Ex. E at 216:13–17 ("████████████████████

████████████████████████████████████████████

████████████████████ Ex. D, ¶ 93; Ex. B at 9 (citing LGE_ANCORA00256237-*trans*)

(████████████████████ That is, the functions and source code identified by Dr. Martin

that operate ████████████████████████████████████████

████████████████████████████.

In his deposition, Dr. Martin dances around this issue arguing for an obscure interpretation of the "entire term" that is absent from his infringement report. Ex. E at 201:11–202:1. Nevertheless, whether the term "agent" is viewed alone, or the entire limitation "using an agent . . ." is considered, the same understanding must still be applied consistently across his reports. This erroneous and inconsistent approach is not reliable and therefore in contravention of the rules of evidence and *Daubert*. 509 U.S. at 595–97. The fact finder could easily be misled, to LGE's prejudice, by relying on opinions from Ancora's proffered expert that apply different constructions to the same terms when he is opining on infringement and invalidity.

### D.    Dr. Martin should be precluded from testifying about X509 certificates.

In passing, Dr. Martin mentions something called X509 certificates. Ex. A, ¶¶ 68–69. However, Dr. Martin never again mentions, much less applies or provides an opinion on, X509 certificates in his infringement analysis. Further, Ancora never identified such certificates in their

infringement contentions.  Ex. J ("Plaintiff's Final Infringement Contentions").  Accordingly, Dr. Martin should be prohibited from offering testimony regarding X509 certificates at trial.

**IV.    CONCLUSION**

Dr. Martin's opinions on Samsung's E-FOTA, LGE's purported direction and control of third parties, the "agent" term, and X509 are unreliable, and should be excluded at trial.

Date:  March 31, 2021                     Respectfully submitted,

                                          */s/ Elizabeth M. Chiaviello*

                                          Winstol D. Carter, Jr.
                                          Texas Bar No. 03932950
                                          winn.carter@morganlewis.com
                                          Thomas R. Davis
                                          Texas Bar No. 24055384
                                          thomas.davis@morganlewis.com
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          1000 Louisiana Street, Suite 4000
                                          Houston, Texas 77002-5006
                                          T. 713.890.5000
                                          F. 713.890.5001

                                          Collin W. Park
                                          collin.park@morganlewis.com
                                          District of Columbia Bar No. 470486
                                          Natalie A. Bennett
                                          natalie.bennett@morganlewis.com
                                          Illinois Bar No. 6304611
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          1111 Pennsylvania Avenue, NW
                                          Washington, D.C. 20004-2541
                                          T. 202.739.3000
                                          F. 202.739.3001

                                          Elizabeth M. Chiaviello
                                          Texas Bar No. 24088913
                                          elizabeth.chiaviello@morganlewis.com
                                          MORGAN, LEWIS & BOCKIUS LLP
                                          1717 Main Street, Suite 3200
                                          Dallas, Texas 75201-7347
                                          T. 214.466.4000
                                          F. 214.466.4001

                                          **Attorneys for Defendants LG Electronics
                                          Inc. and LG Electronics U.S.A., Inc.**

11

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served via the Court's CM/ECF system on all counsel of record who have appeared in this case via electronic mail per Local Rule CV-5.

/s/ *Elizabeth M. Chiaviello*
Elizabeth Chiaviello