**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| ANCORA TECHNOLOGIES, INC., | CIVIL ACTION NO. 1:20-CV-00034-ADA |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| LG ELECTRONICS INC. and LG ELECTRONICS U.S.A., INC., | |
| Defendants. | |
| ANCORA TECHNOLOGIES, INC., | CIVIL ACTION NO. 1:20-CV-00034-ADA |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., | |
| Defendants. | |

**FILED UNDER SEAL**

**ANCORA'S OMNIBUS
RESPONSE TO LGE'S MOTIONS *IN LIMINE***

**TABLE OF CONTENTS**

INTRODUCTORY STATEMENT ........................................................................1

I.    THE COURT SHOULD DENY LGE'S MOTION *IN LIMINE NO. 1* TO EXCLUDE ARGUMENT OR EVIDENCE REGARDING THE SAMSUNG SETTLEMENT AGREEMENT AND ANY RELATED RULE 408 DISCUSSIONS" ......................................................................................2

    A.    Introduction .................................................................................2

    B.    Argument .....................................................................................2

II.    THE COURT SHOULD DENY LGE'S MOTION *IN LIMINE NO. 2* TO EXCLUDE "ARGUMENT OR EVIDENCE SUGGESTING THAT LGE IS AN INDUSTRY HOLDOUT WHO HAS NOT TAKEN A LICENSE FOR THE ASSERTED PATENT, OR THAT LGE HAS ACTED IMPROPERLY BY NOT TAKING A LICENSE FOR THE '941 PATENT"        8

    A.    Introduction .................................................................................8

    B.    Argument .....................................................................................8

III.    THE COURT SHOULD GRANT-IN-PART AND DENY-IN-PART LGE's MOTION *IN LIMINE NO. 3* TO EXCLUDE "ARGUMENT OR EVIDENCE REGARDING POST-ISSUANCE USPTO PROCEEDINGS ADDRESSING THE '941 PATENT." .........................................................................10

    A.    Introduction ...............................................................................10

    B.    Argument ...................................................................................11

    C.    Conclusion ................................................................................17

IV.    THE COURT SHOULD DENY LGE's MOTION *IN LIMINE NO. 4* TO EXCLUDE "ARGUMENT OR EVIDENCE PERTAINING TO LGE PRODUCT DEVELOPMENT OCCURRING AFTER THE EXPIRATION OF THE '941 PATENT TO DEMONSTRATE INFRINGEMENT OF THE ACCUSED PRODUCTS." ..............................................................................18

    A.    Introduction ...............................................................................18

    B.    Argument ...................................................................................19

    C.    Conclusion ................................................................................23

V.      THE COURT SHOULD GRANT-IN-PART AND DENY-IN-PART LGE's
        MOTION *IN LIMINE NO. 5* TO EXCLUDE "ARGUMENT OR EVIDENCE
        SUGGESTING THAT LGE AND ███████ ARE THE SAME ENTITY." .........24

        A.      Introduction ...............................................................................................24

        B.      Argument ...................................................................................................24

VI.     THE COURT SHOULD DENY LGE's MOTION *IN LIMINE NO. 6* TO
        EXCLUDE "ARGUMENT OR OTHER EVIDENCE REFERENCING OR
        RELYING ON SUPERSEDED LGE INTERROGATORY RESPONSES." .......26

        A.      Introduction ...............................................................................................26

        B.      Argument ...................................................................................................27

VII.    THE COURT SHOULD DENY LGE'S MOTION *IN LIMINE NO. 7* TO
        EXCLUDE "ARGUMENT OR EVIDENCE SUGGESTING THAT THE
        ALLEGED INFRINGEMENT WAS WILLFUL, WANTON, MALICIOUS,
        BAD-FAITH, DELIBERATE, CONSCIOUSLY WRONGFUL, OR
        FLAGRANT." ......................................................................................................28

        A.      Introduction ...............................................................................................28

        B.      Argument ...................................................................................................28

VIII.   THE COURT SHOULD DENY LGE'S MOTION *IN LIMINE NO. 8* TO
        EXCLUDE "ARGUMENT OR EVIDENCE SUGGESTING THAT
        INFRINGEMENT OCCURRED WHEN AN ACCUSED PRODUCT WAS
        SUCCESSFULLY UPDATED." ............................................................................30

        A.      Introduction ...............................................................................................30

        B.      Argument ...................................................................................................30

IX.     THE COURT SHOULD DENY LGE'S MOTION *IN LIMINE NO. 9* TO
        EXCLUDE "ARGUMENT OR EVIDENCE SUGGESTING OR STATING
        THAT LGE ███████████████████████████████
        ███████████████████████████." ............................................31

X.      THE COURT SHOULD DENY SAMSUNG'S MOTION *IN LIMINE NO. 10*
        TO EXCLUDE "ARGUMENT OR EVIDENCE DISCUSSING,
        REFERENCING, OR RELYING ON DAMAGES THEORIES OR
        CONTENTIONS NOT DISCLOSED IN PLAINTIFF'S INTERROGATORY
        RESPONSES." ........................................................................................................32

        A.      Introduction ...............................................................................................32

        B.      Argument ...................................................................................................32

XI.   THE COURT SHOULD DENY SAMSUNG'S MOTION *IN LIMINE NO. 11*
      TO EXCLUDE "ARGUMENT OR EVIDENCE REGARDING SAMSUNG'S
      E-FOTA.".............................................................................................................34

XII.  THE COURT SHOULD DENY LGE'S MOTION *IN LIMINE NO. 12* TO
      EXCLUDE "EXTRANEOUS STATEMENTS OR ANALOGIES DURING
      OPENING OR CLOSING STATEMENTS REGARDING PLAINTIFF'S
      BURDEN OF PROOF THAT IS DESIGNED TO ILLICIT AN EMOTIONAL
      JUROR RESPONSE—FOR EXAMPLE, A PARTY WILL NOT MAKE ANY
      ANALOGIES OR COMPARISONS BETWEEN THE BURDEN OF PROOF
      IN CASES INVOLVING PATENT LAW AND THE BURDEN OF PROOFS
      SET OUT IN FAMILY LAW."................................................................................34

XIII. THE COURT SHOULD DENY LGE'S UNBRIEFED MOTIONS *IN LIMINE*
      NOS. 13, 14, 15, 16, AND 17.............................................................................37

      A.   Introduction...............................................................................................37

      B.   Argument ..................................................................................................38

## INTRODUCTORY STATEMENT

Ancora Technologies, Inc. ("Ancora") files this Response to LG Electronics' (LGE) Motions *in Limine No. 1-17* ("LGE MIL") and requests that the Court deny certain of LGE's Motions as set forth below.

At a high level, many of LGE's motions follow the typical pattern of "[m]otions *in limine* [that] are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980), *superseded on other grounds by Mathis v. Exxon Corp.*, 302 F.3d 448 (5th Cir. 2002). But *in limine* motions—particularly ones as vague and abstract as LGE's—should not be granted unless the evidence or testimony sought to be excluded "is clearly inadmissible on all potential grounds." *Ogden v. Cozumel, Inc.*, 2019 WL 5295495, at *1 (W.D. Tex. Oct. 18, 2019).

Indeed, "[t]he movant bears the burden of demonstrating that the evidence is inadmissible on any relevant ground, and the court may deny a motion *in limine* when it lacks the necessary specificity with respect to the evidence to be excluded." *Leonard v. Stemtech Health Scis., Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013). To that end, "[e]videntiary rulings, especially ones that encompass broad classes of evidence, should generally be deferred until trial to allow for the resolution of questions of foundation, relevancy, and potential prejudice in proper context." *Id.*; *see Orchestrate HR, Inc. v. Trombetta*, 2017 WL 273669, at *1 (N.D. Tex. Jan. 20, 2017) ("Evidence should not be excluded *in limine* unless it is clearly inadmissible on all potential grounds." (citations and quotation marks omitted)).

A related theme in LGE's motions *in limine* is a consistent attempt to create a "heads I win, tails you lose" paradox for Ancora. For example, LGE insists that that the Court (1) ███████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

1

████████████████████████████████████████████████████████████

████████████████████████████████████████████ LGE MIL No. 1;

(2) permit LGE's experts to rely on documents dated after October 2018 to support LGE's noninfringement case, but preclude Ancora from using such documents to show infringement, *see* LGE MIL No. 4; and (3) permit LGE to present the jury with LGE's preferred interrogatory answers, but forbid Ancora from presenting LGE's prior admissions that LGE now seeks to disclaim, *see* LGE MIL No. 6. LGE's arguments are, at best, unsupported and, at worst, inconsistent on their face. They should be rejected.

That said, in a few instances, LGE has narrowed its position such that LGE now has identified an evidentiary issue with particularity that Ancora agrees to be inadmissible. As set forth below, Ancora thus agrees to be bound by that proposed MIL provided that LGE is as well. But for the most part, LGE's requests present the precise kind of "abstract" and "hypothetical" concerns that are inappropriate for resolution now, particularly where LGE's requests are vaguely worded with boundaries that are nearly impossible to abide with any degree of certainty. This is especially so for LGE's one-sentence *in limine* motions that are "Not briefed." LGE MIL at 2.

## I.   THE COURT SHOULD <u>DENY</u> LGE'S MOTION *IN LIMINE NO. 1* TO EXCLUDE ARGUMENT OR EVIDENCE REGARDING THE SAMSUNG SETTLEMENT AGREEMENT AND ANY RELATED RULE 408 DISCUSSIONS"

### A.   <u>Introduction</u>

The Court should deny LGE's Motion *in Limine No. 1*.

### B.   <u>Argument</u>

LGE's MIL No. 1 improperly seeks to insulate ██████████████████████████

from critique by seeking to selectively admit ████████████████████████████

██████████████████████████████████████████████ while hiding from

the jury ███████████████████████████████████████████

████████████████████████ But courts have routinely rejected the exact gambit LGE attempts

here, telling litigants ██████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████ That choice is LGE's to make.

Ancora agrees with LGE's statements in its MIL that there are "inherent dangers associated with admitting settlement agreements," which risk "creat[ing] a false impression that the settlements were entered into by willing licensees in an arms-length transaction." LGE MILs at 2-3. For this reason, Ancora filed a *Daubert* motion ████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

In opposing Ancora's *Daubert* motion and defending Mr. Ratliff's reliance on these settlements, LGE unabashedly argued that "reliance on a settlement agreement is not only appropriate based on *ResQNet* and *LaserDynamics*, but [is] **the only non-speculative approach to determining a reasonable royalty**." D.I. 216 at 5; *see id.* at 2, 4. ████████████████████

███████████████████████████████████████████████████

████████████████

Without a hint of irony, LGE now contends that ████████████████████████████

███████████████████████████████████████████████████



But as Ancora explained in its Opposition to LGE's Motion to Strike the supplemental report of Ancora's damages expert, Mr. Robert Mills, *see* D.I. 250, ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

The principle established by *Abbott* and *Century Wrecker*, moreover, merely reflects the general rule embodied by Federal Rule of Evidence 106 that if one "party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." As the Fifth Circuit has explained, the purpose of Rule 106 is to "place in context other writings admitted into evidence which, viewed alone, may be misleading." *United States v. Branch*, 91 F.3d 699, 727 (5th Cir. 1996). That is precisely the case here. ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

Perhaps recognizing the inherent contradiction of its position, LGE takes ██████████

████████████████ approach—arguing that ███████████████████████████████████

██████████████████████████████████████████████ But courts do not allow

parties to exclude only some settlements as "unreliable" when those very same parties rely on other

litigation settlements to derive their proposed royalty. *See Abbott*, 743 F. Supp. 2d at 767-68.

Indeed, in *Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, the court held just the opposite—ruling that

where both parties agreed that settlement agreements could be used to derive a reasonable royalty

(but sought exclusion of their opponent's preferred settlement), the parties' "dispute over the most

factually comparable license should be resolved by the jury." 2015 WL 11110651, at *5 (E.D. Tex.

Dec. 4, 2015).

Even setting aside, however, that LGE's comparability argument is a question of weight,

not admissibility, *id.*, LGE also is completely wrong in claiming that ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

LGE also completely misreads *Eidos Display, LLC v. Chi Mei Innolux Corp.*, 2017 WL

1322550 (E.D. Tex. Mar. 29, 2017), in arguing that "settlement agreement[s] for an expired patent

ha[ve] the potential to skew the hypothetical negotiation." LGE MIL at 4. In *Eidos*, the <u>plaintiff,</u>

<u>not the defendant,</u> was seeking to exclude a settlement to an expired patent. The court's concern

in *Eidos* thus was that the settlement of an expired patent would ███████████ ████████ because the settlement compensated "only liability [for] past infringement and past damages" and included nothing for future royalties. *Eidos*, 2017 WL 1322550 at *4. ██████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

        Settlement licenses to the patent-in-suit also are admissible evidence of secondary considerations of non-obviousness. Indeed, in reversing a district court's obviousness finding, the Federal Circuit has squarely held that evidence of "licensing supports nonobviousness." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1353 (Fed. Cir. 2012). Thus, courts have denied MILs like LGE's for the precise reason that "[o]bjective evidence of nonobviousness includes commercial success and licenses showing industry respect for the invention." *Audio MPEG, Inc. v. Dell, Inc.*, 2017 WL 4460759, at *4 (E.D. Va. Oct. 6, 2017) (quotation marks omitted). Rather, "the commercial success and nonobviousness of a patent is often demonstrated through the use of license agreements, even—and **perhaps especially— license agreements obtained in settlement litigation**." *Bd. of Regents of Univ. of Tex. Sys. v. Planameca USA, Inc.*, 2005 WL 8156687, at *3 (W.D. Tex. June 2, 2005) (citing *Datapoint Corp. v. Picturetel Corp.*, 1998 WL 51356, at *2 (N.D. Tex. Jan. 23, 1998)); *accord Datatreasury Corporation v. Wells Fargo & Co.*, 2010 WL 11468934, at *17 (E.D. Tex. Oct. 5, 2010) (holding that plaintiff could use prior licenses to show validity including to demonstrate "secondary considerations of nonobviousness").

        Finally, ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
███████████████. Specifically, ████████████████████████████████████████
████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████ the PTAB had rejected a nearly identical CBM

Petition, *see* Ex. 5 (PTAB Decision Denying HTC CBM Pet'n)[1], █████████████████████████,

confirmed that the '941 Patent's claims "are not directed to ineligible subject matter" and thus "are

not invalid under § 101." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1344 (Fed. Cir.

2018), as amended (Nov. 20, 2018). ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████

In sum, LGE's ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

The Court should deny LGE's MIL No. 1.

---

[1] All exhibits are attached to the May 14, 2021 Declaration of Steven M. Seigel, with the exception of any exhibit denoted as "**DX__**" or **"PX__"**. The latter are trial exhibits that will be provided to the Court as part of the Joint Pretrial Order. All emphasis are added by Ancora unless otherwise specified.

**II.     THE COURT SHOULD <u>DENY</u> LGE'S MOTION *IN LIMINE NO. 2* TO EXCLUDE "ARGUMENT OR EVIDENCE SUGGESTING THAT LGE IS AN INDUSTRY HOLDOUT WHO HAS NOT TAKEN A LICENSE FOR THE ASSERTED PATENT, OR THAT LGE HAS ACTED IMPROPERLY BY NOT TAKING A LICENSE FOR THE '941 PATENT"**

**A.     <u>Introduction</u>**

The Court should deny LGE's Motion *in Limine No. 2*. Although Ancora will not refer to LGE as "the last/lone holdout" or "last man standing"—both factually incorrect statements given Ancora's other pending litigations over the '941 Patent—LGE's Motion otherwise is so broad that it would exclude all facts demonstrating (correctly) that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, <u>have</u> licensed the '941 Patent, LGE <u>has not</u>. LGE's motion should thus be denied.

**B.     <u>Argument</u>**

LGE's motion broadly seeks to exclude any "argument" or "evidence" that even "suggest[s] that LGE is an industry holdout who has not taken a license" to the '941 Patent. LGE MIL at 4-5. There are three core problems with this *in limine* request.

<u>First</u>, LGE <u>is</u> an industry holdout who has not licensed the '941 Patent. It admits that fact in its Motion, stating:



have paid Ancora ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In contrast, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These are indisputable facts.

--------

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Second, ███████████████████████████████████████████████████████ will be apparent to any juror that hears the basic evidence in this case. Thus, LGE's *in limine* motion is wildly overbroad. ████████████████████████████████████████ ████████████████████████████████████████ And Ancora will be entitled to introduce ████████████████████████ to explain to the jury ███████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████

Third, LGE's motion sweeps too broadly in that it could be understood to exclude reference to and criticisms of █████████████████████████████████████████████████. Indeed, LGE's 30(b)(6) representative admitted that ███████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████████ LGE also admitted that, █████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ Ancora is entitled to explore at trial the reasons that LGE has ██████████████████ ████████████████████████████████████████████████

To be sure, Ancora will not argue, as LGE fears, that LGE is "the last/lone holdout" or "last man standing." Such a claim would in fact be incorrect, as Ancora has pending litigation against other industry participants such as Sony and HTC. But broadly precluding Ancora from

putting on evidence that ████████████████████████████ licensed the '941 Patent while LGE has not would impermissibly restrict evidence and argument both parties will rely on to address damages in this case. *See MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 2019 WL 2437073, at *4 (N.D. Cal. June 11, 2019) (granting *in limine* motion to preclude plaintiff from referring to defendant as "the last/lone holdout" but otherwise denying broader relief, including by holding that the plaintiff "may present evidence regarding the other licenses that [it] entered into with other [industry players]"). Further, nothing should preclude Ancora from pointing out that ████████████████████████████████████████████████████████

████████████████████████████████████████████

In sum, apart from Ancora's agreement not to refer to LGE is "the last/lone holdout" or "last man standing," the Court should deny LGE's Motion *in Limine No. 2* in all other respects.

## III.   THE COURT SHOULD <u>GRANT-IN-PART</u> AND <u>DENY-IN-PART</u> LGE's MOTION *IN LIMINE NO. 3* TO EXCLUDE "ARGUMENT OR EVIDENCE REGARDING POST-ISSUANCE USPTO PROCEEDINGS ADDRESSING THE '941 PATENT."

### A.   <u>Introduction</u>

The Court should grant-in-part and deny-in-part LGE's Motion *in Limine No. 3*. Although Ancora agrees that no party should introduce evidence of or otherwise refer to any non-final <u>pending</u> post-grant (IPR) proceedings concerning the '941 Patent,[3] LGE's motion should be denied as to the following proceedings and decisions:

1. Apple's filing of a Petition for CBM Review of the '941 Patent immediately prior to Ancora and Apple reaching a settlement in 2016;

2. The PTAB's final decision denying HTC's Petition for CBM Review of the '941 Patent, in which it <u>rejected</u> HTC's attempt to cast the patent—exactly as LGE does here—as directed to "software piracy";

---

[3] Specifically: *TCT Mobile (US) Inc. v. Ancora Techs., Inc.*, No. IPR2020-01609; *HTC Corp. v. Ancora Techs., Inc.*, No. IPR2021-00570; *LG Elecs., Inc. v. Ancora Techs., Inc.*, No. PR2021-00581; *Sony Mobile Comm'cns AB v. Ancora Techs., Inc.*, No. IPR2021-00663.

3. The PTAB's final decision denying Samsung's Petition for IPR on the identical obviousness combination LGE asserts in its invalidity case (Schwartz and Yee), which the PTAB referred to as "weak" on the merits; and

4. The final decision confirming patentability as a result of Microsoft's *ex parte* reexamination over the same prior art reference (Schwartz) LGE asserts here.

As explained below, all four of these proceedings and final decisions are relevant and necessary to defend against claims, arguments, or theories that **LGE has injected into this case**. Ancora must be afforded an opportunity to rebut LGE's improper claims by reference to this subset of post-grant proceedings concerning the '941 Patent.

### B.    Argument

As a general matter, Ancora agrees that the occurrence of post-grant proceedings (particularly pending proceedings) are not germane to issues of infringement and validity. But LGE has made clear that, in trying this case, it will take positions that can only be fully and fairly rebutted by addressing a subset of the completed post-grant proceedings involving the '941 Patent.

As Ancora explained in its own Motion *in Limine No. 2* to exclude evidence and argument relating to the TCL IPR proceedings, *see* D.I. 247 (Ancora MILs)—a motion that is now moot in light of LGE's position that **all** post-grant proceedings are off limits—longstanding Federal Circuit precedent holds that non-final PTO proceedings, including IPRs, are "of little relevance to the jury's independent deliberations on the factual issues underlying the question of [validity]." *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009); *see Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1351 (Fed. Cir. 2019) ("We have often affirmed district courts['] … exclu[sion of] evidence of a non-final determination from ongoing proceedings at the Patent Office.").

At the same time, "admission of IPRs is not *per se* prohibited." *EagleView Techs., Inc. v. Xactware Sols., Inc.*, 485 F. Supp. 3d 505, 526 n.19 (D.N.J. 2020). Indeed, the Federal Circuit precedent against admission of pending proceedings does not preclude reference to final decisions or the fact of the proceedings themselves, particularly where one party intends to put at issue the very topics or issues addressed in a particular proceeding. Indeed, "IPR denials may be relevant to rebutting a defendant's invalidity assertions at trial," and "[t]here is also the risk in a given case that unless the IPR denials are introduced, the jury may wrongly infer that the prior art was not before the Patent Office even though it was considered and rejected." *Id.*

For this reason, courts routinely deny *in limine* motions like the one LGE brings here, where the moving party intends to "open the door" to certain issues to which certain post-grant decisions or proceedings are directly relevant as rebuttal evidence. *Id.*; *see, e.g.*, *Dentsply Sirona Inc. v. Edge Endo, LLC*, 2020 WL 6392764, at *5 (D.N.M. Nov. 2, 2020) (denying motion *in limine* to exclude introduction of PTAB's decision denying institution of IPR where defendants "opened the door" by putting at issue the matters addressed in the IPR); *Cal. Inst. of Tech. v. Broadcom Ltd.*, Dkt. 1976, No. 16-03714, at 4 (C.D. Cal. Jan. 17, 2020) (admitting evidence regarding IPR proceedings to the extent that the defendants "open the door" by the fact that there was "overlap between Defendants' purported invalidity theories presented during IPR and others that it attempted to argue during the course of this case")[4]; *Solutran, Inc. v. U.S. Bancorp & Elavon, Inc.*, 2018 WL 1276999, at *5 (D. Minn. Mar. 12, 2018) (provisionally rejecting *in limine* motion to exclude CBM proceedings to the extent defendant introduces invalidity theories having any "overlap" with the issues considered and rejected by the PTAB); *Hochstein v. Microsoft Corp.*, 2009 WL 2022815, at *5 (E.D. Mich. July 7, 2009) (permitting plaintiffs to introduce "introduce

---

[4] A copy of the decision is attached as Ex. 1 to the May 14, 2021 Declaration of Steven Seigel.

evidence of the first patent reexamination if Microsoft presents evidence, testimony or argument regarding the specific combinations of prior art the patent examiner rejected in the first reexamination").

Because LGE intends to open the door to issues that, to be fairly rebutted, require reference to a subset of Ancora's post-grant proceedings, LGE's motion must be denied as to these specific decisions or proceedings.

### 1.     Apple's Filing of a CBM Review Petition is Relevant to Rebut



At that time, 73% of all CBM petitions were granted institution, and of the instituted CBMs that did not settle or seek dismissal, 77% resulted in a decision of unpatentability as to all claims.[5]

---

[5] *See* Patent Trial and Appeal Board Statistics (Apr. 30, 2016) at 8 & 11, *available at* https://www.uspto.gov/sites/default/files/documents/2016-4-30%20PTAB.pdf.

Only a few months later, in March 2016, the judge in the Apple case also signaled to Mr. Mullor that it was a "close call" as to whether it would rule to invalidate Ancora's patent under 35 U.S.C. § 101 and *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014). *See* D.I. 42, No. 15-cv-03659-YGR (N.D. Cal.). During that hearing, the judge repeated three times that the § 101 issue was a "close call" and that, after *Alice*, patents like the '941 Patent were "frankly much less compelling than they used to be." Ex. 4 (March 8, 2016 *Apple* Hearing Transcript) at 3-4.

Rather than rule at the hearing, however, the court directed the parties to settle the case. *Id.* at 24. ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

At trial, LGE will argue that ██████████████████████████

███████████████████████████████████████████████████

██ And to rebut this claim, Ancora must be able to explain ███████████████

███████████████████████████████████████—including the possibility that the '941 Patent would ultimately be invalidated by the PTAB.

████████████████████████████ is directly relevant ███████████

███████████████████████████████████ and Ancora must be allowed to discuss it at trial.

14

**2.      The PTAB's Final Decision Denying CBM Review of the '941 Patent Undercuts LGE's Attempt to Paint the '941 Patent as Directed to "Software Piracy".**

In LGE's Summary Judgment briefing in this case, it made clear that it intended to misleadingly and incorrectly describe the '941 Patent as confined to preventing "software piracy." D.I. 199 (LGE MSJ) at 2. LGE repeated this false claim throughout its Motion, stating, *e.g.*, that:

- "the '941 Patent . . . relates to <u>preventing pirated software</u>, and has nothing to do with verifying intact data," *id.* at 2;

- "[t]he patent is directed to <u>preventing software piracy</u>," *id.* at 5;

- "[t]he entire background of the invention relates to <u>preventing illegal copying of software or the use of illegally copied software</u>," *id.* at 5;

- "[t]he inventive aspect . . . is realized when the <u>pirated program is run</u>," *id.* at 31;

- "[a] hacker would understand that the verifier could easily be "tricked" into allowing a <u>pirated program to run</u>," *id.* at 33; and

- "<u>preventing software piracy</u> is not implicated in any way [by LGE's alleged infringing activities]," *id.* at 35.

These claims are false. Indeed, in denying HTC's Petition for CBM review of the '941 Patent, the PTAB expressly rejected the exact framing LGE attempts here: that "the '941 discloses a method to restrict the operation of software <u>in order to address piracy</u>." Ex. 5 (PTAB Decision Denying HTC CBM Pet'n) at 9. The PTAB expressly rejected that view and found instead that "the claims of the '941 patent recite a technological improvement to problems arising in prior art software and hardware methods of restricting an unauthorized software program's operation." *Id.*

Thus, because LGE admittedly intends to incorrectly frame, describe, and refer to the patent as "directed to <u>preventing software piracy</u>," D.I. 199 (LGE MSJ) at 5, and suggest that preventing piracy is the '941 Patent's "inventive aspect," *id.* at 31, Ancora should be allowed to demonstrate that the U.S. Patent and Trandemark Office already has given thoughtful consideration to this improper description and resoundingly rejected it.

**3.     The PTAB's Decision Denying Institution of Samsung's IPR in View of**
***Schwartz* and *Yee*, and the PTO's Reexamination Decision, are**
**Admissible to Rebut LGE's Claim that the Same Prior Art Invalidates**
**the '941 Patent.**

Where a defendant introduces and relies on invalidity theories that have already been
considered and rejected by the patent office in post-grant proceedings, the patent owner is entitled
to raise the results of those post-grant proceedings at trial. *See* Ex. 1 (*Cal. Tech.*, No. 16-03714) at
4; *Solutran*, 2018 WL 1276999, at *5; *Hochstein*, 2009 WL 2022815, at *5.

Here, LGE intends to adduce testimony from its expert, Dr. Suzanne Barber, that the '941
Patent is "██████████████████████████████████ Ex. 6 (Barber Invalidity
Rpt.) at 207-227. But the PTAB has twice rejected these same theories.

First, the patent office found the '941 Patent to be valid and patentable over <u>Schwartz</u> in a
2009 ex parte reexamination. Ex. 7 (Reexamination Decision) at ANCORA_00003168,
ANCORA_00003175.

Second, the patent office has also considered and rejected the combination of <u>Schwartz</u> and
<u>Yee</u> in rejecting Samsung's Petition for IPR of the '941 Patent. Ex. 8 (PTAB Decision Denying
Institution of Samsung IPR) at 5 (identifying combination of Schwartz and Yee). And to be clear,
this was not a mere procedural ruling—to the contrary, the PTAB made a preliminary "inspection
of the merits" and determined that, as to all of Samsung's asserted grounds of invalidity, including
the Schwartz/Yee combination, "Petitioner's challenges contain certain weaknesses" that weighed
against instituting review. *Id.* at 24; *see id.* at 27 ("[C]ertain aspects of Petitioner's grounds as to
claim 1 (the sole independent challenged claim) appear to be weak.").

To the extent LGE intends to raise either of these prior art references in its invalidity case,
Ancora is entitled to rebut LGE's arguments by presenting the patent office's prior consideration
and rejection of these same theories. *See Hochstein*, 2009 WL 2022815, at *5 (permitting

"Plaintiffs . . . to introduce evidence of the first patent reexamination if Microsoft presents evidence, testimony or argument regarding the specific combinations of prior art the patent examiner rejected in the first reexamination."); *Contour Ip Holding, LLC*, 2021 WL 75666, at *8 (N.D. Cal. Jan. 8, 2021) ("If GoPro opens the door . . . by stating or implying that references were not previously considered when they were, Contour may introduce IPR evidence to rebut that statement or implication.").

> **4.     The PTAB's Reexamination Decision is Also Relevant to the Extent LGE's Technical Expert is Permitted to Opine on the Plain and Ordinary Meaning of "Memory of the BIOS."**

Finally, although Ancora has filed a *Daubert* motion to preclude LGE's expert from improperly opining on claim construction to narrow the meaning of the term "memory of the BIOS," D.I. 194 (Ancora *Daubert* Mot. RE: Barber) at 3-5, if the Court denies Ancora's request, Ancora must be able to introduce rebuttal testimony from its own expert to explain why, in view of the reexamination decision, a POSITA would disagree with Dr. Barber's conclusion that ████████████████████████████████████████████████████████████ ████████████████

### C.     Conclusion

In sum, the court should grant LGE's MIL No. 1 as to all <u>pending</u> IPR proceedings, but <u>deny</u> it as to: (1) Apple's Petition for CBM Review of the '941 Patent; (2) the PTAB's final decision denying HTC's Petition for CBM Review of the '941 Patent; (3) the PTAB's final decision denying Samsung's Petition for IPR of the '941 Patent in view of *Schwartz* and *Yee*; and (4) the final reexamination decision confirming patentability of the '941 Patent over *Schwartz*.

**IV.    THE COURT SHOULD <u>DENY</u> LGE's MOTION *IN LIMINE NO. 4* TO EXCLUDE "ARGUMENT OR EVIDENCE PERTAINING TO LGE PRODUCT DEVELOPMENT OCCURRING AFTER THE EXPIRATION OF THE '941 PATENT TO DEMONSTRATE INFRINGEMENT OF THE ACCUSED PRODUCTS."**

**A.    <u>Introduction</u>**

For three main reasons, Court should deny LGE's Motion *in Limine No. 4* to bar Ancora from using any technical documents and other "evidence that post-dates the expiration of the '941 patent" in October 2018 to prove infringement in this case. *See* LGE MIL at 8.

<u>First</u>, LGE's position is flatly contradicted by its own expert's use of post-October 2018 technical documents to describe LGE's accused products and articulate its non-infringement positions. Indeed, LGE's expert confirmed what LGE's own witnesses admitted during their depositions: that LGE's post-October 2018 technical documents ██████████████████ ████████████████

<u>Second</u>, LGE's position is unsupported by any law. LGE cites no decisions whatsoever, let alone any cases holding that later-in-time technical documents can never be probative in establishing how earlier-in-time products operate—particularly where LGE can identify no material differences between them. Nor has LGE identified a single example of Ancora's expert, Dr. Martin, erroneously relying on a post-October 2018 document that ████████████████ ████████████

<u>Third</u>, LGE's argument is a bald-faced attempt to leverage ████████████ against Ancora. Throughout fact discovery in this case, Ancora ██████████████████ ████████████████████████████████████. At every turn however, ████████████████ ████████████████████████████████████████ ████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████. This is so even though its corporate representatives

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████

**B.** **Argument**

1. **LGE's Technical Expert Relies On "Post-Expiration" Documents to Describe the Accused Products and Opine on Non-Infringement.**

LGE's attempt to bar Ancora's use of post-October 2018 documents to prove infringement should be denied because LGE uses those very same documents to develop its own non-infringement proofs. Specifically, LGE's technical expert, Dr. Barber, ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████.

Although they are numerous, a few examples from Dr. Barber's non-infringement report illustrate ████████████████████████████████████

████████████████████████████████

- ██████████████████████████████████████████████

  ██ ████████████████████████████████

██ ██████████████████████████████████████████████

  ██ ██████████████████████████████



In addition to relying on these post-October 2018 documents, Dr. Barber also ▮▮▮▮▮

In sum, LGE's request to bar <u>Ancora</u> from using post-October 2018 technical documents—while insisting on using those very same documents for its own purposes—should be rejected out of hand.

### 2. Post-October 2018 Technical Documents are Plainly Probative of How the Accused Products Function.

LGE's *in limine* motion also should be denied because LGE cites **no case** holding that a later-in-time technical document can never be probative of how an earlier-in-time product functions. (In fact, LGE's motion cites no caselaw at all.) To the contrary, these manuals and technical guides are evidence of how LGE's OTA Update functionality operates across products. And even if the technical documents are not directly tied to a specific accused model, they undoubtedly provide strong circumstantial evidence of how the accused products operate, which constitutes competent proof of infringement. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1326 (Fed. Cir. 2009) ("Direct infringement can be proven by circumstantial evidence."). Finally, LGE has not identified a single instance in which Dr. Martin's reliance on post-October 2018 technical documents yielded an erroneous description of the accused products' functionality.[6] And even if it had, LGE would be able to cross examine Dr. Martin on such issues before the jury.

### 3. LGE ██████████████████████████████████ ██████████████████████████████████.

Finally, LGE cannot fault Ancora for citing post-October 2018 documents when ████ ████████████████████████████████████████████████████████████ ████████████████████████████████.

At the very outset of the case, LGE had a Court-ordered obligation to "produce . . . technical documents . . . sufficient to show the operation of the accused product(s)" along with its invalidity contentions. D.I. 21 (Order Governing Proceedings) at 2. LGE failed to produce such materials—████████████████████████████████████████████

---

[6] To be clear, Dr. Martin does not rely exclusively on such technical documents for his opinions. His infringement report includes extensive analyses of LGE source code, deposition testimony, and public sources, which he supplements with citations to and excerpts of technical manuals to explain and describe the functionality of LGE's accused devices.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████

At the motion to compel hearing, this Court told LGE it was "████████████

████████████████████ ordered LGE to produce, for 10 representative accused

products, "engineering manuals" and other technical documents. *See* D.I. 91 (8/10/2020 Hrg. Tr.)

at 21:5-7, 22:23-7. It also ordered LGE to produce ESI g████████████████████

███████████████████████████████████████

███████████████████████████ *See id.* at 13:2-25.

███████████████████████, however, in an August 31, 2020 email, LGE

stated unequivocally that ████████████████████████████████

███████████████████████████████████████

███████████████████



Ex. 10 (August 2020 Discovery Email) at 1. And as to the ESI, LGE similarly ███████████ ████████████████████████████████████████████████████



*Id.*

In short, LGE made crystal clear that ██████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████

Given LGE's admitted refusal to █████████████████████████████████

*id.*, LGE cannot seriously argue that Ancora should be barred from using "documents that are dated <u>after</u> October 1, 2018 as a basis to find infringement during the life of the '941 patent." LGE MIL at 9. Yet that is precisely what LGE demands in its Motion. LGE's request represents ████████████████████████████████████████████████████ ████████████████████████████████████

### C.   Conclusion

The Court should deny LGE's MIL No. 4.

---

[7] These representations were untrue. In a deposition of LGE's corporate representative conducted the day fact discovery closed (Jan. 8, 2021), LGE admitted that ████████████████████████

**V.      THE COURT SHOULD <u>GRANT-IN-PART</u> AND <u>DENY-IN-PART</u> LGE's MOTION
*IN LIMINE NO. 5* TO EXCLUDE "ARGUMENT OR EVIDENCE SUGGESTING
THAT LGE AND ▮▮▮▮ ARE THE SAME ENTITY."**

**A.      <u>Introduction</u>**

Ancora will not assert that the defendants in this case—LG Electronics and LG Electronics

U.S.A.—are the same corporate entity as ▮▮▮▮ However, the Court otherwise should deny

LGE's Motion, because the fact that ▮▮▮▮ is a close affiliate of LG not only is germane to

Ancora's claim that LGE directs, controls, or forms a joint enterprise with ▮▮▮▮, but is directly

supported by LGE's documents and the admissions of its various witnesses.

**B.      <u>Argument</u>**

LGE's vaguely worded motion seeks to bar Ancora from "suggesting" that LGE and ▮▮▮

▮▮▮ are "the same entity." This strikes too broadly, as Ancora would risk violating the MIL any

time it introduced evidence tending to show that ▮▮▮▮ operates at LGE's direction or control,

or acts in concert with LGE as a joint enterprise. *See Akamai Techs., Inc. v. Limelight Networks,
Inc.*, 797 F.3d 1020 (Fed. Cir. 2015) (en banc).

For example, LGE's "Consolidated Financial Statements" consistently list ▮▮▮▮▮▮

▮▮▮▮▮▮s" as a "related party," including financial disclosures of both income and

expense transactions. *See, e.g.*, PX01556 at 117. Such evidence would risk exclusion under LGE's

proposed MIL as it could "**<u>suggest</u>** that LGE and ▮▮▮▮ are the same entity." LGE MIL at 9.

LGE might also seek to exclude evidence of its End User License Agreement, which,

contrary to LGE's claim that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *id.* at 9-10, expressly states that ▮▮

▮▮ is under "common ownership or control" with LGE:



> <u>Affiliates and Subsidiaries.</u> LGE may share personal information and
> nonpersonal information (including device information) with its affiliates
> and subsidiaries around the world only so long as necessary for the purposes

for which it was collected. **The term 'affiliates' or 'subsidiaries' refers to group companies who may be using LG name or who has common ownership or control such as** ▆▆▆▆▆▆ or ▆▆▆▆▆▆ ▆▆▆▆."

Ex. 12 (LG Electronics End User License Agreement) at 12.

Similarly, documentary evidence such as organization charts like the one below that show ▆▆▆▆ answers to LGE could also run the same risk of violating LGE's MIL:



*See* D.I. 223 (Ancora Opp. to LGE MSJ) at 9.

LGE's cases concerning the legal standards of corporate independence, moreover, are entirely irrelevant because proof of LGE and ▆▆▆▆ relationship as corporate "affiliates," "related parties," or entities that share "common ownership or control" is squarely relevant to showing direction and control and/or the existence of a joint enterprise under *Akamai*.[8] Indeed, in *Orthopaedic Hosp. v. DJO Glob., Inc.*, a court rejected the same argument LGE makes here. 2020

---

[8] To be clear, Ancora has not pursued—and will not seek any instruction at trial—concerning "alter ego" liability, which is a distinct theory of direct infringement that requires showing the parent to be an "alter ego" of the subsidiary such that the parent and subsidiary may be treated as a single entity for purposes of direct infringement. *See Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1379 (Fed. Cir. 2001) (holding that, to prove "alter ego" liability, a plaintiff must show "that the parent company either was an alter ego of the subsidiary or controlled the conduct of the subsidiary").

WL 7129347 (S.D. Cal. Dec. 4, 2020).

In *Orthopaedic*, the defendants moved for summary judgment of no-infringement under *Akamai* by arguing that they were merely "indirect parent companies" and that their indirect subsidiary—a separate corporate entity—was responsible for infringement. *Id.* at *2-4. Despite defendants' claim that "Plaintiff has neither pled nor made any attempt to justify piercing the corporate veil" between the independent corporate entities, *id.* at *4, the court found that evidence of the close relationship between the corporate entities presented a "genuine issue of material fact . . . regarding Defendants' level of involvement" in the allegedly infringing activities under *Akamai*. *Id.* at *3.

Such evidence included, for example, the corporations' shared use of generic acronyms for their company, and the fact that the corporations used a common website to market the accused devices, which "straightforwardly implicates [the indirect parent's] involvement" in the alleged infringement. *Id.* at *4. Thus, evidence of the relationship between even <u>indirectly affiliated</u> corporate entities is relevant to establishing vicarious liability under *Akamai*.

In sum, LGE cannot use its ambiguously worded motion to exclude evidence of LGE's direction and control of ██████—a company that, in LGE's own documents, is under "common ownership or control" with LGE. Ex. 12 (EULA) at 12. It is ultimately for the jury to decide whether "the conduct of ██████ can be attributed to LGE." LGE MIL at 10. And in fact, LGE's own documents make clear that it should.

The Court should deny LGEs MIL No. 5.

## VI.  THE COURT SHOULD <u>DENY</u> LGE's MOTION *IN LIMINE NO. 6* TO EXCLUDE "ARGUMENT OR OTHER EVIDENCE REFERENCING OR RELYING ON SUPERSEDED LGE INTERROGATORY RESPONSES."

### A.  <u>Introduction</u>

The Court should deny LGE's Motion *in Limine No. 6*.

B.      **Argument**

This is a frivolous motion. Every court to have addressed this issue has denied the relief LGE seeks here. The reason is simple: "Interrogatory answers are clearly admissible evidence, even if they have been subsequently modified or supplemented." *Nye v. Ingersoll Rand Co.*, 2011 WL 5513190, at *7 (D.N.J. Nov. 9, 2011).[9]

Every decision Ancora located that addressed this issue has uniformly held that **all** interrogatory responses served by a party are admissible at trial, regardless of whether the responding party claims that its amended responses are intended to "supersede" its original responses. *See*, *e.g.*, *id.* (denying motion to exclude "interrogatory answers that [plaintiffs] have subsequently amended" and argued were "stale" and "superseded"); *Acorda Therapeutics Inc. v. Apotex Inc.*, 2011 WL 13232503, at *2 (D.N.J. Apr. 29, 2011) (denying "Defendants' motion *in limine* . . . to preclude evidence and argument at trial based on [its] superseded interrogatory answer").

As the court explained in *Stehn v. Cody*, "both the original and the supplemental answers to the interrogatories are admissible" and "the Court is not aware of any authority that would prevent Plaintiff from offering [defendant's] original [interrogatory] answer, even if it were subsequently amended." 74 F. Supp. 3d 140, 148 (D.D.C. 2014). Similarly, in *Mangual v. Prudential Lines, Inc.*, the court explained that original responses to an interrogatory were "admissible despite the[ir] amendment" as the original responses "clearly constituted an evidentiary admission requested by the adverse party." 53 F.R.D. 301, 302-03 (E.D. Pa. 1971).

---

[9] Not surprisingly, LGE cites zero authorities supporting its request. Indeed, the two cases LGE does cite confirm that LGE's interrogatory responses—supplemented or not—are "admission[s] by a party opponent, which [are] admissible" at trial. *Wells v. Abercrombie & Fitch Stores, Inc.*, 2009 WL 10700281, at *2 n.1 (M.D. La. Mar. 26, 2009); *Wagner v. Boh Bros. Const. Co., LLC.*, 2012 WL 3637392, at *4 (E.D. La. Aug. 22, 2012) (same).

Moreover, if LGE is concerned that its "original" responses are not accurate and would be misleading for the jury to view them in isolation, it is entitled to seek admission of its supplements under the rule of completeness. *See* Fed. R. Evid. 106; *accord Stehn*, 74 F. Supp. at 148 (holding that original and amended responses may be offered under FRE 106).

At bottom, LGE cannot "justif[y] . . . keeping [its] original answers from the jury." *Stehn*, 74 F. Supp. 3d at 148. Rather, Ancora is entitled to raise any and all "discrepancies between Defendant's initial answers to interrogatories and [its] subsequent amended answers to the interrogatories." *Id.* Whether an interrogatory response is "accurate"—just like whether LGE's shifting answers affect its credibility—is not for LGE to dictate. They are questions for the jury to decide.

The Court should deny LGEs MIL No. 6.

**VII.   THE COURT SHOULD <u>DENY</u> LGE'S MOTION *IN LIMINE NO. 7* TO EXCLUDE "ARGUMENT OR EVIDENCE SUGGESTING THAT THE ALLEGED INFRINGEMENT WAS WILLFUL, WANTON, MALICIOUS, BAD-FAITH, DELIBERATE, CONSCIOUSLY WRONGFUL, OR FLAGRANT."**

**A.   <u>Introduction</u>**

The Court should deny LGE's Motion *in Limine No. 7*.

**B.   <u>Argument</u>**

LGE's MIL No. 7 typifies the kind of "hypothetical" and "abstract" concern for which *in limine* orders are improper. *Collins*, 621 F.2d at 784

As Ancora made clear to LGE during the parties' meet and confer and multiple emails, Ancora will not claim willful infringement at trial. Ancora will not seek a jury instruction on this issue. It will not seek enhanced damages under 25 U.S.C. § 284. And for that reason, Ancora also will not argue during opening or closing that LGE's infringement satisfies the legal standard for willfulness under *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 136 S. Ct. 1923 (2016).

At the same time, however, Ancora explained to LGE that it is entitled to present to the jury all evidence of LGE's infringement of the '941 Patent without concern for whether such evidence could, in a juror's mind, illustrate "flagrant," "consciously wrongful," or "deliberate" infringement. Indeed, under Federal Rule of Evidence 401, courts should admit all evidence having "any tendency" to make the existence of a material fact "more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Thus, to the extent any evidence tends to show willful infringement, it is probative on the initial question of infringement and should be admitted.

Due to this exact overlap, other courts have rejected similar motions where a party has agreed not to claim willfulness at trial but requests that it not be artificially restricted from introducing evidence of the defendant's infringing conduct that might otherwise be used to establish willfulness. In *Momenta Pharms., Inc. v. Amphastar Pharms., Inc.*, the plaintiff agreed "it will not claim willful infringement at trial," but insisted that it nonetheless had "the right to introduce evidence of what [defendant] knew, when [defendant] knew it, and what [defendant] chose to do." 2017 WL 2818985, at *2 (D. Mass. June 29, 2017). The court agreed, holding that it was entitled to introduce "evidence of willful infringement" even though it was not arguing to the jury that it was entitled to a finding of willfulness infringement. *Id.*

Finally, also problematic here is that Ancora does not even know what documents or testimony LGE believes might violate its proposed MIL—nor has LGE ever identified a single example despite Ancora's request that it do so. For this reason alone, LGE's motion should be denied without prejudice—leaving any concerns to be addressed at trial as they arise. *See A.Hak Indus. Servs. BV v. Techcorr USA, LLC*, 2014 WL 12591895, at *1 (N.D.W. Va. Dec. 18, 2014) ("District courts routinely deny a motion *in limine* that does not specify the evidence or argument to be excluded because such a motion is premature."). If LGE believes that Ancora has presented argument or evidence in a manner that is somehow unduly prejudicial or misleading, it can raise a

contemporaneous objection, allowing the Court to make an informed decision based on actual, specific facts. That approach is far preferable to an unduly broad and hypothetical *in limine* order that places Ancora at risk of a violation without any clear understanding of its boundaries.

LGE's MIL No. 7 should be denied.

**VIII.   THE COURT SHOULD <u>DENY</u> LGE'S MOTION *IN LIMINE NO. 8* TO EXCLUDE "ARGUMENT OR EVIDENCE SUGGESTING THAT INFRINGEMENT OCCURRED WHEN AN ACCUSED PRODUCT WAS SUCCESSFULLY UPDATED."**

**A.   <u>Introduction</u>**

The Court should deny LGE's Motion *in Limine No. 8.*

**B.   <u>Argument</u>**

LGE's motion rehashes the same misleading arguments LGE asserted in its MSJ—namely, that the Claim 1 step of "acting on the program according to the verification" can occur "only when a negative action takes place according to the verification." D.I. 199 (LGE MSJ) at 43.

LGE is wrong. As Ancora explained in opposing LGE's MSJ, LGE's "negative-only" argument amounts to "a back-door attempt to have a [second] Markman hearing [on the scope of a term] that the defendants already agreed was unnecessary and renege on their agreement as to the construction." *Minemyer v. B-Roc Reps., Inc.*, 2011 WL 1099265, at *2 (N.D. Ill. Mar. 22, 2011); *see* D.I. 222 (Ancora Opp. to LGE MSJ) at 41-42. LGE's argument also represents a blatant misreading of the '941 Patent, which states time and again that "allowing the use of the program" falls within the "acting" step's scope. *See* D.I. 222 (Ancora Opp.) at 41.

But even if LGE's "negative-only" argument were correct—and it is not—Dr. Martin has demonstrated that, even when "successful" updates occur, ███████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

In short, Ancora is entitled to introduce evidence of LGE's infringement of the "acting"
step, regardless of whether the Court allows LGE "to renege on [its] agreement," *Minemyer*, 2011
WL 1099265, at *2, and assert the exact opposite construction than the one it agreed to during
*Markman* briefing.

LGE's MIL No. 8 should be denied.

## IX.   THE COURT SHOULD <u>DENY</u> LGE'S MOTION *IN LIMINE NO. 9* TO EXCLUDE "ARGUMENT OR EVIDENCE SUGGESTING OR STATING THAT LGE ██████████████████████████████████████████████████████

Ancora incorporates its affirmative Motion *in Limine No. 10* seeking an adverse inference
instruction based on ████████████████████████████████████████████
████████████████████████████████████. *See* D.I. 247 (Ancora MILs) at 27-36. For
the same reasons stated in that Motion, the Court should deny LGE's Motion *in Limine No. 9*.

Indeed, LGE's admonition that "[t]he parties should try this case on the merits," LGE MILs
at 15, only confirms why an █████████████████████████████████. LGE has
made clear that it intends to try the "merits" by █████████████████████ as grounds to
reject Ancora's expert opinions, deny LGE's infringement, and depress the damages award LGE
should pay. *See, e.g.*, D.I. 247 (Ancora MILs) at 27-28, 35 (detailing LGE's arguments); D.I. 198
(LGE Daubert Motion) at 6 (seeking to exclude damages opinions because ██████████████
██████████████████████); D.I. 232 (LGE MSJ Reply) at 9 (arguing

lack of infringement based on ███████). But, as Ancora has explained, these are precisely the kinds of prejudicial and improper arguments that Rule 37(e)(2) and the Court's inherent powers are supposed to prevent. *See* D.I. 247 (Ancora MILs) at 35. In short, LGE's insistence that the case be tried on the "merits"—but only as self-servingly curated by LGE and ████████████ ███████████████████—simply bolsters Ancora's *in limine* motion for a curative instruction.

For similar reasons, there is no merit to LGE's claim that an adverse-inference or curative instruction would "poison the well" with "innuendo." LGE MILs at 15. There is no "innuendo." <u>It is an indisputable fact that</u> ██████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████████t. D.I. 247 (Ancora MILs) at 31-34. And if LGE insists on relying on the ████████████████, it cannot preclude Ancora from informing the jury that ████████████████████████. *Id.* at 34-36.

The Court should deny LGE's MIL No. 9.

## X.   THE COURT SHOULD <u>DENY</u> SAMSUNG'S MOTION *IN LIMINE NO. 10* TO EXCLUDE "ARGUMENT OR EVIDENCE DISCUSSING, REFERENCING, OR RELYING ON DAMAGES THEORIES OR CONTENTIONS NOT DISCLOSED IN PLAINTIFF'S INTERROGATORY RESPONSES."

### A.   <u>Introduction</u>

The Court should deny LGE's Motion *in Limine No. 10*.

### B.   <u>Argument</u>

LGE's one-paragraph MIL typifies the type of "hypothetical" *in limine* motion courts routinely deny. It contains only a single example of the evidence LGE seeks to exclude: "The 'supplemental' expert report of Ancora's damages expert, Mr. Mills," that is the subject of "LGE's

pending Motion to Strike." LGE MIL at 15 (citing D.I. 244). If the relief LGE seeks in this MIL is the same as what it seeks in its Motion to Strike, then the outcome of both motions will rise and fall together. But LGE's proposed *in limine* order is much broader than merely excluding Mr. Mills's supplemental report, and for that reason it should be denied as hypothetical and overbroad.

Other than Mr. Mills's supplement, LGE cites no specific data, no witness, no exhibit, and no other report that would be subject to this motion. And the language of LGE's proposed blanket prohibition is unmanageably vague.

For one thing, LGE provides no description of what, in its view, would qualify as a "timely disclosed." LGE MIL at 15. For another, LGE's reasoning is perfectly circular: LGE knows that Rule 37(c)(1)'s exclusionary rule requires analyzing whether an allegedly untimely disclosure "was substantially justified or is harmless." D.I. 244 (LGE Mot. to Strike) at 3. But rather than identify anything it believes fails that test, LGE tautologically insists that any "[un]timely disclosed" evidence must be excluded. In other words, LGE's motion seeks the preemptive exclusion of **hypothetically** excludable evidence, without first satisfying its burden to show that an exclusion sanction is warranted as to any particular piece of evidence.

For this very reason, courts properly reject theoretical motions like this one. *See, e.g.*, *Wilson v. Hartford Ins. Co. of the Midwest*, 2011 WL 2670199, at *1 (W.D. Wash. July 7, 2011) ("Hartford seeks to exclude any expert testimony, witness, or document that has not been previously disclosed. The court denies this motion because Hartford cited no particular evidence that it wished to exclude. The court cannot resolve a motion that provides no factual context."); *Wharton v. Preslin*, 2009 WL 1850085, at *7 (S.D. Ohio June 26, 2009) (denying MIL for a "blanket exclusion" of "all witnesses and exhibits previously known by Defendant but which were not disclosed pursuant to Federal Rule of Civil Procedure 26(a)(1) or otherwise through the channels of discovery" because the "Court declines to make a theoretical ruling on hypothetical

evidence with which [the Court] is unacquainted"). Similarly, Courts refuse to grant motions—like LGE's—that simply parrot the Federal Rules in the abstract. *See, e.g.*, *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-cv-00135-JRG, D.I. 692 at 9 (denying MIL to "[e]xclude arguments or expert testimony outside the context of the experts' Rule 26 reports" as "duplicative of the Federal Rules of Civil Procedure").

If LGE has a specific concern or issue, it should have raised it with sufficient specificity so that Ancora—and the Court—could meaningfully consider and address it. Because LGE failed to do so, the Court should deny LGE's MIL No. 10.

## XI.   THE COURT SHOULD <u>DENY</u> SAMSUNG'S MOTION *IN LIMINE NO. 11* TO EXCLUDE "ARGUMENT OR EVIDENCE REGARDING SAMSUNG'S E-FOTA."

LGE's brief MIL No. 11 seeks the same relief as LGE's *Daubert* Motion to Exclude and Strike Certain Opinions of Mr. Robert Mills. *See* D.I. 198. Because LGE offers no additional substantive arguments beyond what it included in that motion, Ancora incorporates by reference here its Opposition to LGE's *Daubert* motion. *See* D.I. 214. For the same reasons stated in that Opposition, the Court should deny LGE's Motion *in Limine No. 11*.

## XII.   THE COURT SHOULD <u>DENY</u> LGE'S MOTION *IN LIMINE NO. 12* TO EXCLUDE "EXTRANEOUS STATEMENTS OR ANALOGIES DURING OPENING OR CLOSING STATEMENTS REGARDING PLAINTIFF'S BURDEN OF PROOF THAT IS DESIGNED TO ILLICIT AN EMOTIONAL JUROR RESPONSE—FOR EXAMPLE, A PARTY WILL NOT MAKE ANY ANALOGIES OR COMPARISONS BETWEEN THE BURDEN OF PROOF IN CASES INVOLVING PATENT LAW AND THE BURDEN OF PROOFS SET OUT IN FAMILY LAW."

LGE asks the Court to exclude anything that might be "designed to illicit an emotional juror response" with respect to explaining the competing burdens of proof as between Ancora's infringement and damages case (preponderance) and LGE's invalidity case (clear and convincing). But LGE's state-of-mind-based motion is both insolubly subjective and unmanageably broad. It should be rejected, just as the Court rejected a similar motion in *VLSI Tech., LLC v. Intel Corp.*,

No. W:21-CV-00057-ADA, D.I. 508 at 6 (W.D. Tex.) (denying "Intel MIL No. 14 – Exclude Comparisons of Burden of Proof Standards).

To begin, LGE provides no justification for such a broad pre-trial ruling. Ancora obviously has no intention of mischaracterizing the relevant burdens of proof. But explaining to jurors what those burdens mean in a manner that will be well-understood is another matter entirely. Simply stating the applicable burdens (e.g., preponderance, clear and convincing) does nothing to render them intelligible to people who have no familiarity with legal terminology.

Because lay jurors are generally unfamiliar with the burden-of-proof concept and the various standards that apply, "[a]nalogies or images from the juror's experience may be useful tools for explaining the civil burden of proof." 2 TOXIC TORTS LITIGATION GUIDE § 15:25. For instance, in the criminal context, courts have approved prosecutors' use of a "jigsaw puzzle" analogy to explain the reasonable-doubt standard, using "a slide show of a partially completed jigsaw puzzle and urg[ing] the jury to . . . fill in the missing pieces of the puzzle," *Post v. Glebe*, 2016 WL 5349409, at *1 (W.D. Wash. Sept. 26, 2016), or explaining that:

> A trial is very much like a jigsaw puzzle. It's not like a mystery novel or CSI or a movie. You're not going to have every loose end tied up and every question answer[ed]. What matters is this: Do you have enough pieces of the puzzle? Do you have enough evidence to believe beyond a reasonable doubt that the defendant is guilty?

*State v. Fuller*, 169 Wn. App. 797, 827 (2012). Courts have similarly approved analogizing the reasonable-doubt burden to buying a house or deciding whether to undergo an operation to remove a cancerous tumor, *see Cleveland v. Bradshaw*, 65 F. Supp. 3d 499, 534 (N.D. Ohio 2014), urging the jury "to use common sense and life experience," *Rowland v. Davy*, 2020 WL 1216780, at *8 (C.D. Cal. Jan. 30, 2020), making an analogy to Occam's razor, *see United States v. Faye*, 728 F. App'x 120, 124 (3d Cir. 2018), or analogizing to skiing in Blythe, *see Stoltie v. Cal.*, 501 F. Supp.

2d 1252, 1255 (C.D. Cal. 2007), *aff'd sub nom. Stoltie v. Tilton*, 538 F.3d 1296 (9th Cir. 2008).[10]

LGE's proposed standard also is unworkable. It asks the court to determine if a particular statement or analogy is "<u>designed to</u> illicit an emotional response," LGE MIL at 15—a standard that requires the Court to evaluate counsel's state of mind. Nor does LGE articulate any clear line dividing analogies that might illicit an "emotional response" and those that would not. Rather, LGE offers an "I know it when I see it" standard that is as blurry as it is unmanageable, stating:

> [T]here is a line between explanatory analogy and an analogy designed to elicit an emotional reaction. Counsel in this case are sophisticated and know where that line is.

LGE MIL at 16. There is no reason for the Court to draw a line that LGE cannot even define.

If LGE believes that Ancora has described the burdens of proof in a manner that LGE believes is inaccurate or prejudicial, LGE can object at that time. In so doing, the Court can make a reasoned decision informed by the context and the actual facts at hand. That approach is far preferable to issuing a broad, abstract, hypothetical, and psychological *in limine* order that may lean likely also exclude genuinely helpful and appropriate information.

---

[10] The "skiing in Blythe" analogy was used by the trial court in a habeas petition to explain the difference between reasonable and unreasonable doubt:

> JUDGE: . . . If you have a reasonable doubt, it's not guilty. If I were to tell you that I am going to Blythe*—you know where Blythe is?
> JUROR NO. 3: Yeah.
> JUDGE: I'm gonna go there in the middle of July and I am taking my skis with me because it snows every July 4**, you might say, I doubt it. And that would be a reasonable doubt, wouldn't it? But if I told you I am going to Blythe and I am taking my swimming suit and water skiis to go skiing in the Colorado River in the middle of July, but I am afraid it might be too cold, you'd think, I doubt it, but maybe that's not so unreasonable. Reason and logic apply. I think that may help you out.

> * Blythe is a town on the Colorado River, in the Sonoran Desert, approximately 220 miles east of Los Angeles.
> ** The average high temperature in Blythe in July is 108 degrees Farenheit.

*Stoltie*, 501 F. Supp. at 1255.

36

The Court should deny LGE's Motion *in Limine No. 11*.

## XIII.   THE COURT SHOULD <u>DENY</u> LGE'S UNBRIEFED MOTIONS *IN LIMINE* NOS. 13, 14, 15, 16, AND 17

### A.   <u>Introduction</u>

The Court should deny LGE's unbriefed motions *in limine*. LGE's only justification for its failure to submit supporting memoranda is that its "motions *in limine* [are ones] that LGE contends are routinely excluded at trial and do not require additional briefing." D.I. 249 (LGE Mot. to File Excess Pages) at 1. But as Ancora already has explained, because Federal Rule of Evidence 401 favors admission of any evidence having "any tendency" to make the existence of a material fact "more probable or less probable than it would be without the evidence," it is **<u>always the moving party</u>** that "bears the burden of demonstrating that the evidence is inadmissible **<u>on any relevant ground</u>**." *Leonard*, 981 F. Supp. 2d at 276. Where, as here, the motion "lacks the necessary specificity with respect to the evidence to be excluded," it should be denied. *Id.*

Because the moving party bears the burden of demonstrating that the to-be-excluded evidence is "clearly inadmissible on all potential grounds," *Ogden*, 2019 WL 5295495, at *1, courts routinely deny or reserve ruling on "unbriefed" boilerplate MILs like the ones LGE files here. *See, e.g.*, *Rothwell v. City of Chicago*, 2011 WL 5169419, at *4 (N.D. Ill. Oct. 31, 2011) ("In light of both parties' failure to [brief] the motions *in limine* . . . [they] are denied."); *Reyes v. Seaton Enterprises, LLC*, 2008 WL 2697291, at *4 (E.D. Tenn. May 23, 2008) ("Defendants filed three motions in limine without any supporting memoranda . . . . Without more detail on the objectionable material the Court cannot resolve these issues."); *U.S. Fire Ins. Co. v. Kelman Bottles LLC*, 2014 WL 3890355, at *3 (W.D. Pa. Aug. 8, 2014) (because party "not brief this issue in its memorandum of law in support of the motion in limine, . . . [t]he Court will not consider this challenge").

Even though the Court may simply reject these unbriefed motions out of hand, Ancora nonetheless provides brief statements as to why each is inappropriate.

**B.**     <u>Argument</u>

      **1.**     **The Court Should <u>DENY</u> LGE's Motion *in Limine No. 13* to Exclude "Argument or evidence that LGE knew of U.S. Patent No. 6,411,941 prior to the lawsuit."**

LGE has maintained in its written discovery responses that it did not know of the '941 Patent prior to Ancora's filing of its lawsuit. However, Ancora is entitled to admit deposition testimony and ask LGE at trial whether LGE conducted any searches for patents on OTA Update technology and ask when LGE learned of the patent.

      **2.**     **The Court Should <u>DENY</u> LGE's Motion *in Limine No. 14* to Exclude "Arguments or statements regarding the outcome of any motions or discovery disputes related to U.S. Patent No. 6,411,941."**

Ancora agrees that it will not reference the outcome of LGE's Motion for Summary Judgment or any other non-dispositive motion other than the Court's *Markman* Orders.

With respect to discovery disputes, however, LGE has made representations and statements to Ancora during the parties' discovery disputes that bear on the evidence at issue in this case. Indeed, LGE's MIL No. 4 seeks to bar Ancora from relying on ███████████████

████████████████████████████████████████████████████

██████████████████████████ *See supra* at 21-23. Similarly, LGE has argued that Ancora's

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ *See* D.I. 247 (Ancora MIL No. 10) at 27-36.

In other words, LGE has blatantly and unabashedly "opened the door" to its █████████

████████████████████████████████████████████████████

████████████████████████████. Further, the Court should deny this *in*

*limine* motion for the reasons detailed in Ancora's MIL No. 10. Ancora is entitled to an adverse-inference or other curative jury instruction because of ███████████, and accordingly is entitled to address those issues at trial. *See* D.I. 247-1 (Ancora's Motions *in Limine*) at 27-36.

3.    **The Court May <u>GRANT IN PART</u> LGE's Motion *in Limine No. 15* to Exclude "Argument or evidence suggesting that any party won or lost claim construction."**

Ancora does not intend to make any reference to one party or another "winning or losing" their claim construction arguments. Ancora should, however, be entitled to inform the jury when the Court's constructions track what Ancora proposed—particularly to the extent that LGE intends to suggest or argue that Ancora has shifted its understanding of the claims to reach LGE's infringing actions.

4.    **The Court Should <u>DENY</u> LGE's Motion *in Limine No. 16* to Exclude "Argument or evidence suggesting any theories of infringement not included in Plaintiff's final infringement contentions."**

For the same reason the Court should deny LGE's MIL No. 10 concerning interrogatory responses not timely disclosed, *see supra* at 33-34, the Court should deny this Motion as speculative and hypothetical. To be sure, Ancora will not adduce any testimony from its technical expert that extends beyond the boundaries of what is disclosed in his reports. But in the absence of any particular example of a "theory" that LGE believes is impermissible, the Court should deny this motion as impermissibly vague. *See, e.g.*, *Wilson*, 2011 WL 2670199, at *1 (denying motion where party "cited no particular evidence that it wished to exclude" as "[t]he court cannot resolve a motion that provides no factual context"); *Wharton*, 2009 WL 1850085, at *7 (similar).

5.    **The Court Should <u>DENY</u> LGE's Motion *in Limine No. 17* to Exclude "Reference to any other LGE cases, litigations, or disputes or evidence from therein."**

The Court should deny LGE's MIL No. 17.

LGE once again seeks to employ a sword/shield approach—demanding that it be allowed

to bring up unrelated and highly prejudicial allegations against Ancora (such as the Microsoft lawsuit that wrongfully accused Mr. Mullor of trade secret theft and other misconduct) while insulating itself from introducing any similar evidence. This is improper. Neither party should be permitted to raise unrelated matters such as criminal investigations or litigations (like Microsoft's counterclaims against Ancora and Mr. Mullor) that are highly prejudicial and unrelated to the matters at hand.

Further, LGE obscures the true aims of its vague and broadly worded *in limine*, which seeks to exclude not just "litigations," but also any "**<u>disputes</u>** or evidence from therein." By this broad and vague term, LGE seeks to preclude Ancora from:

    (1) discussing news coverage of Android and LGE security flaws and vulnerabilities that were fixed by pushing out new software updates <u>using the infringing OTA Update technology</u>;

    (2) countering any narrative by LGE suggesting that asserting a patent is improper by, e.g., asking about any of LGE's patent-enforcement actions against others.

LGE's motion should largely be denied.

<u>First</u>, press coverage of LGE's security flaws and vulnerabilities (which were or could be fixed by using the infringing OTA Update technology) is directly relevant to the value and importance of LGE's technology. LGE's broadly worded motion would exclude all such coverage, despite its direct relevance to demonstrating the value LGE places on the infringing technology. LGE's motion also includes any investigations that have been conducted that result from such security breaches or flaws, which again demonstrate the significance of security bugs and other vulnerabilities that may be fixed by using the accused technology.

<u>Second</u>, LGE includes on its exhibit list scores of <u>positive</u> press coverage—including its own press releases—that its expert relies on to bolster LGE's clout as a global powerhouse. LGE cannot credibly contend that only <u>positive</u> news coverage is relevant but that <u>negative</u> news

coverage of "disputes" is unfairly prejudicial.

Third, although Ancora has no intent to affirmatively raise at trial LGE's patent-assertion activities, it is only fair that, if LGE opens the door, Ancora should be given the freedom to inquire into LGE's assertion of its own patents. *See*, *e.g.*, *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 2015 WL 627430, at *1 (E.D. Tex. Jan. 31, 2015) (allowing plaintiff to address defendant's patent assertion activities if defendant opened the door by "making derogatory, disparaging, and/or pejorative references to [plaintiff]").

In sum, the Court should deny LGE's motion, with the exception that Ancora agrees that it would be inappropriate for either party to address wholly unrelated investigations (such as criminal investigations) and wholly unrelated litigations (in which neither LGE nor Ancora is a party or, for example, Microsoft's counterclaims against Ancora and Mr. Mullor personally).

Date: May 14, 2021

/s/ Steven M. Seigel
Charles Ainsworth
State Bar No. 00783521
Robert Christopher Bunt
State Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 418
Tyler, TX 75702
(903) 531-3535
charley@pbatyler.com
rcbunt@pbatyler.com

Lexie G. White (Texas 24048876)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
lwhite@susmangodfrey.com

Andres Healy (*pro hac vice*)
Steven M. Seigel (*pro hac vice*)
Nicholas S. Crown (*pro hac vice*)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800

Seattle, Washington 98101
Tel: (206) 516-3880
Fax: 206-516-3883
ahealy@susmangodfrey.com
sseigel@susmangodfrey.com
ncrown@susmangodfrey.com

Zachary B. Savage (*pro hac vice*)
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: (212) 336-8330
Fax: (212) 336-8340
zsavage@susmangodfrey.com

**COUNSEL FOR PLAINTIFF ANCORA TECHNOLOGIES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being notified of the filing of this document via the Court's CM/ECF system per Local Rule CV-5(b)(1). I also hereby certify that LGE's counsel of record are being served with a copy of the foregoing document via electronic mail on this 14th day of May 2021.

/s/ *Steven M. Seigel*
Steven M. Seigel